[No. G046549. Fourth Dist., Div. Three. Feb. 28, 2013.]

SOCO WEST, INC., Plaintiff and Respondent, v.
CALIFORNIA ENVIRONMENTAL PROTECTION AGENCY et al.,
Defendants and Appellants.

1512

## COUNSEL

Kamala D. Harris, Attorney General, Brian W. Hembacher and Thomas G. Heller, Deputy Attorneys General, for Defendants and Appellants.

Rutan & Tucker, Richard Montevideo and Peter J. Howell for Plaintiff and Respondent.

## OPINION

**RYLAARSDAM, Acting P. J.**—This case involves the interpretation of Health and Safety Code section 25187, subdivision (b)(1)(A) (all further undesignated statutory references are to this code). The issue is whether that statute *required* defendants California Environmental Protection Agency's Department of Toxic Substances Control and the director of that department (collectively, DTSC) to transfer the cleanup of a hazardous waste site from chapter 6.5 (Chapter 6.5) to chapter 6.8 (Chapter 6.8) of division 20 of the code upon written request from plaintiff Soco West, Inc. (Soco), or merely gave DTSC *discretion* to decide whether to do so. The trial court concluded the statute mandated the transfer and granted Soco's motion for judgment on the pleadings. DTSC disagrees and appeals.

We hold the plain language of section 25187, subdivision (b)(1)(A) unambiguously required DTSC to invoke the legal remedies available pursuant to Chapter 6.8 after Soco voluntarily requested in writing that DTSC issue an order for Soco to take corrective action pursuant to that chapter. Even if an ambiguity existed in the statutory language, the legislative history surrounding the adoption of section 25187, subdivision (b)(1)(A) confirms our reading of the statute as requiring DTSC to invoke the procedures of Chapter 6.8 upon Soco's written request. We grant Soco's request for judicial notice of this material.

We modify the judgment to conform to the language of section 25187, subdivision (b)(1)(A). As modified, the judgment is affirmed.

## FACTS AND PROCEDURAL BACKGROUND

Soco's predecessor created a hazardous waste site and in the late 1980's began environmental assessment and cleanup work overseen by DTSC under Chapter 6.5 (§ 25100 et seq.). Thereafter, Soco assumed its predecessor's obligations. In 2008 and 2009, Soco submitted written requests to DTSC to "transfer . . . the cleanup process" from Chapter 6.5 to Chapter 6.8 (§ 25300 et seq.). DTSC declined Soco's requests and its subsequent requests for reconsideration. Soco sued DTSC, alleging it had abused its "discretion by refusing to transfer the oversight of the assessment and cleanup of the Site from Chapter 6.5 to Chapter 6.8." It requested a writ of mandate "commanding [DTSC] to" make the transfer and sought a declaratory judgment interpreting the parties' rights and responsibilities under section 25187, subdivision (b)(1)(A). DTSC cross-complained against Soco for injunctive and declaratory relief.

On the parties' cross-motions for judgment on the pleadings, the court denied DTSC's and granted Soco's. DTSC dismissed its cross-complaint without prejudice.

## DISCUSSION

### 1. *Standards of Review*

We review the granting of a motion for judgment on the pleadings de novo to determine whether a cause of action has been stated, treating as true all properly pleaded material facts. (*Hopp v. City of Los Angeles* (2010) 183 Cal.App.4th 713, 717 [108 Cal.Rptr.3d 1].) We apply the same de novo standard of review to a trial court's interpretation of a statute (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 916 [129 Cal.Rptr.2d 811, 62 P.3d 54]), with our primary objective being "to ascertain and effectuate legislative intent," which we do first by looking at the "words of the statute, giving them their usual and ordinary meaning. [Citations.]" (*Nolan v. City of Anaheim* (2004) 33 Cal.4th 335, 340 [14 Cal.Rptr.3d 857, 92 P.3d 350].) We turn to those now.

### 2. *Statutory Language*

Section 25187 is part of Chapter 6.5, the Hazardous Waste Control Law. (§ 25100 et seq.) Under section 25187, subdivision (b), DTSC "may issue an order requiring corrective action whenever [it] . . . determines that there is or has been a release, as defined in Chapter 6.8 (commencing with Section 25300), of hazardous waste or constituents into the environment from a

hazardous waste facility." Chapter 6.8 is known "as the Carpenter-Presley-Tanner Hazardous Substance Account Act" (§ 25300), "California's 'Super-fund' law" (*Foster-Gardner, Inc. v. National Union Fire Ins. Co.* (1998) 18 Cal.4th 857, 861 [77 Cal.Rptr.2d 107, 959 P.2d 265]) and its "version of the Comprehensive Environmental Response, Compensation, and Liability Act . . . [citations]" (*Ameron Internat. Corp. v. Insurance Co. of State of Pennsylvania* (2010) 50 Cal.4th 1370, 1379 [118 Cal.Rptr.3d 95, 242 P.3d 1020]).

■ Subdivision (b)(1) of section 25187 states DTSC "shall pursue the remedies available under this chapter [(Chapter 6.5)], including the issuance of an order for corrective action pursuant to this section, before using the legal remedies available pursuant to Chapter 6.8 (commencing with Section 25300), *except in any of the following circumstances.*" (Italics added.) The subdivision then lists six exceptions to the requirement DTSC must "pursue the remedies available under" Chapter 6.5. The first of these is contained in subdivision (b)(1)(A) (subpart (A)), which reads: "If the person who is responsible for the release voluntarily requests in writing that the department issue an order to that person to take corrective action pursuant to Chapter 6.8 (commencing with Section 25300)."

It appears to us the exception is unequivocal and unambiguous. "If the person who is responsible for the release [(i.e., Soco)] voluntarily requests in writing that the department [(i.e., DTSC)] issue an order . . . to take corrective action pursuant to Chapter 6.8" (subpart (A)), the requirement that DTSC "shall pursue the remedies available under" (§ 25187, subd. (b)(1)) Chapter 6.5 no longer applies. There is no dispute that Soco made such a request in writing and that the request was voluntary and not coerced by DTSC.

Both parties have requested we review the history surrounding the adoption of section 25187, subdivision (b)(1)(A). Even if there was ambiguity in this statute, our review of the legislative history confirms our interpretation of the statutory language.

### 3. *Legislative Materials*

#### a. *Background*

Assembly Bill No. 1962 (1995–1996 Reg. Sess.) (Assembly Bill No. 1962), the bill that added what would become subdivision (b) of section 25187, was introduced to require DTSC to pursue Chapter 6.5 remedies first before those in Chapter 6.8. (Assem. Com. on Environmental Safety and Toxic Materials, Analysis of Assem. Bill No. 1962 (1995–1996 Reg. Sess.)

Apr. 18, 1995, p. 3 (Assembly Committee Report).) According to its sponsor, although both chapters had the same cleanup standards, Chapter 6.5 provided "a faster process for achieving real cleanup, due to its flexibility and the lack of stigma attached to being under 'corrective action' as compared to being labeled as a 'Superfund Site,' " and DTSC "sometimes attempt[ed] to shoe-horn [Chapter 6.5] participants into [the Superfund] program as a matter of convenience . . . and possibly for monetary gain." (Assem. Com. Rep., *supra*, at p. 3.)

The initial draft of Assembly Bill No. 1962 contained no exceptions to the requirement DTSC pursue Chapter 6.5 remedies before those in Chapter 6.8. (Assem. Bill No. 1962 (1995–1996 Reg. Sess.) as introduced Feb. 24, 1995.) But due to concerns that "many facilities request DTSC to issue an order under Chapter 6.8 instead of Chapter 6.5," without which they "cannot achieve cost recovery from insurance carriers or . . . internal authorization to proceed with the needed corrective action plan," and "[t]o be consistent with the sponsor[']s intent and yet to provide the flexibility many owners/operators may require," the Assembly committee report suggested "an amendment . . . to permit any facility subject to the provisions of the measure to voluntarily petition the DTSC for an order under the provisions of Chapter 6.8 and for DTSC to issue such an order without being in conflict with the provisions of this measure." (Assem. Com. Rep., *supra*, p. 3.) This developed into Assembly Bill No. 1962's first exception, which would become what is now subpart (A). (Assem. Bill No. 1962 (1995–1996 Reg. Sess.) as amended Apr. 20, 1995 [requiring DTSC to proceed under ch. 6.5 before ch. 6.8 unless responsible party "voluntarily petitions [DTSC] to issue an order pursuant to Chapter 6.8" (italics omitted)].)

DTSC opposed the April 20, 1995 draft of Assembly Bill No. 1962 because, among other things, it "[w]ould allow the owner, instead of DTSC, to decide which is the most appropriate cleanup program for a given site." It was concerned the bill "[w]ould require the Chapter 6.5 corrective action process to be used even in instances where it is clearly inappropriate." Although its position was "oppose unless amended" (bold and capitalization omitted), it stated, "DTSC supports, and follows, the general concept of exhausting Chapter 6.5 corrective action remedies prior to taking action under the Chapter 6.8 superfund law for releases from hazardous waste facilities. However, Assembly Bill No. 1962 should be amended to allow DTSC to have the flexibility to determine under which program a contaminated site should be cleaned up." (Dept. of Toxic Substances Control, Analysis of Assem. Bill No. 1962 (1995–1996 Reg. Sess.) June 8, 1995, p. 3 (Bill Analysis).)

DTSC repeated its concerns in a letter from its then director to the Senate, urging it to vote " 'no' on AB 1962, unless amended." It attached a suggested

amendment to both its bill analysis and its letter to the Senate, proposing the word "petition" be changed to "requests" and the addition of the exceptions that would become subparts (B) through (F) of former section 25187, subdivision (a)(1) (now subdivision (b)(1)). DTSC did not specifically recommend it be allowed discretion to require a site be cleaned up under Chapter 6.5 even if a responsible party requests to proceed under Chapter 6.8.

The Senate amended Assembly Bill No. 1962 by changing "petition" to "requests in writing" and adding the exceptions proposed by DTSC. (Sen. Amend. to Assem. Bill No. 1962 (1995–1996 Reg. Sess.) June 26, 1995; Sen. Amend. to Assem. Bill No. 1962 (1995–1996 Reg. Sess.) July 11, 1995.) A September amendment fixed a grammatical error in subpart (A) and made other changes not at issue in this case. (Sen. Amend. to Assem. Bill No. 1962 (1995–1996 Reg. Sess.) Sept. 1, 1995.)

Despite recognizing the bill "*will allow the responsible party, instead of DTSC, to decide which is the most appropriate cleanup program for a given site*" (Dept. of Toxic Substances Control, Enrolled Bill Rep. on Assem. Bill No. 1962 (1995–1996 Reg. Sess.) Sept. 18, 1995, p. 2, italics added (Enrolled Bill Report)), DTSC recommended approval of amended Assembly Bill No. 1962 in its Enrolled Bill Report. (Enrolled Bill Rep., *supra*, at p. 1.) The report stated the exceptions to the requirement of first proceeding under Chapter 6.5 "encompass[ed] all anticipated circumstances where, even if the responsible party chooses corrective action under Chapter 6.5, DTSC may eventually need to invoke Chapter 6.8 authority" or where "Chapter 6.5 would not be the mechanism of choice" (Enrolled Bill Rep., *supra*, at p. 1; see *Canister v. Emergency Ambulance Service, Inc.* (2008) 160 Cal.App.4th 388, 402 [72 Cal.Rptr.3d 792] [finding "enrolled bill report instructive in ascertaining legislative intent"].) The amended bill passed both houses, and the Governor approved it in October 1995. (Stats. 1995, ch. 629, § 1, p. 4663.)

b. *Analysis*

It thus appears that DTSC's contemporaneous interpretation provides Soco the right to choose under which chapter to proceed. The clearest indication the Legislature did not intend to give DTSC discretion to determine whether to proceed under Chapter 6.5 or Chapter 6.8, once the responsible party requested Chapter 6.8 procedures be invoked, is the Legislature's failure to adopt an amendment that would have given it such discretion. DTSC expressly opposed Assembly Bill No. 1962 unless it was amended to give it rather than the responsible party the power to determine whether action should be required under Chapter 6.5 or Chapter 6.8. In spite of this proposed amendment, the only changes made by the Legislature were to add subparts

(B) through (F) and replace the word "petition" with "request in writing" in subpart (A). We do not view the latter, rather meaningless change as responding to DTSC's desire for discretion when a responsible party invokes the exception under subpart (A).

The above documents show the Legislature added subpart (A) to allow responsible parties, not DTSC, to decide whether to proceed by way of Chapter 6.8 to facilitate insurance recovery or internal authorization to proceed with cleanup. The DTSC interpreted Assembly Bill No. 1962—along with what would become subpart (A)—in the same manner, concluding it gave responsible parties the ability to determine under which cleanup program to proceed. That DTSC sought only to retain its ability to invoke Chapter 6.8 under certain circumstances where the owner inappropriately chose corrective action under Chapter 6.5 (Enrolled Bill Rep., *supra*, at p. 2), but not to keep a cleanup under Chapter 6.5 where the responsible party elects Chapter 6.8, also supports our conclusion DTSC did not have discretion to deny an owner's written request for a Chapter 6.8 order.

DTSC argues the change in subpart (A) from "petition" to "request[]" "supports a discretionary interpretation, not a mandatory" one because "[t]he Legislature did not ascribe any special non-discretionary meaning to these ordinarily discretionary words when they were added to AB 1962." But "petition" is defined as a "request" (Merriam-Webster's Collegiate Dict. (10th ed. 1996) p. 869), which in turn has both discretionary and nondiscretionary definitions. Moreover, as the trial court observed, the change "also could have simply been designed to make the process easier for the responsible party."

Although DTSC correctly notes the Bill Analysis and a letter from its then director to a senator do not refer to the final version of Assembly Bill No. 1962, that is not the point. Rather the point is what the Legislature did with DTSC's concerns. As explained above, the only change made to subpart (A) was to remove the word "petition" and replace it with "request in writing." We frankly fail to see a difference in the meaning between "petition" and "request in writing."

■ Citing other parts of the statutory scheme within both Chapter 6.5 and Chapter 6.8, namely sections 25355.5, 25358.3, 25356, 25180, and 25105, DTSC argues it had discretion to decide the type of cleanup order to issue. But these provisions speak generally of DTSC's discretion, while subpart (A) specifically gives the responsible party the right to request and require a transfer from Chapter 6.5 to Chapter 6.8. It is well established "a more specific statute controls over a more general one [citations]." (*Lake v. Reed* (1997) 16 Cal.4th 448, 464 [65 Cal.Rptr.2d 860, 940 P.2d 311].) Moreover,

reading the statute to give DTSC complete discretion would render the exception in subpart (A) meaningless. (See *McCarther v. Pacific Telesis Group* (2010) 48 Cal.4th 104, 110 [105 Cal.Rptr.3d 404, 225 P.3d 538] [" 'A construction making some words surplusage is to be avoided.' "]; Code Civ. Proc., § 1859; Civ. Code, § 3534.)

### c. *Public Policy*

DTSC asserts "it would be poor public policy to let . . . a responsible party, such as Soco . . . tell [it] how to do its job" because DTSC (1) had "the institutional knowledge, expertise, and experience necessary to determine what cleanup process is appropriate for a particular site," (2) was "charged with protect[ing] . . . public health and the environment," and (3) "kn[e]w best," along with the Legislature, "where those limited public monies are most needed and should be appropriated for response actions." But it was the Legislature that chose to enact a bill repeatedly described as allowing the responsible party to dictate the appropriate cleanup program. Even DTSC acknowledged in its Enrolled Bill Report that, the exceptions to section 25187, subdivision (b)(1) "[i]n practice . . . will allow the most protective, timely and cost effective cleanup program to be used." (Enrolled Bill Rep., *supra*, at p. 2.)

According to DTSC, allowing its oversight of the cleanup to be transferred to Chapter 6.8 "calls into question [its] ability to enforce . . . Chapter 6.5 requirements that are not covered by Chapter 6.8" and "could decrease the amount of private financial assurance funds available to clean up this hazardous waste facility." DTSC's failure to support these claims with any reasoned argument as to when or how these potentialities might come to light forfeits them on appeal. (*EnPalm, LLC v. Teitler* (2008) 162 Cal.App.4th 770, 775 [75 Cal.Rptr.3d 902].) In any event, there has been no allegation the amount of financial assurance has not been set and DTSC does not claim that figure may be decreased once set. As for increases, those are allowed only for annual inflation or where modification of the facility's closure or postclosure plan is sought, which DTSC acknowledges is not at issue. (See § 25246, subd. (b) [closure and postclosure "plans shall be updated if requested by the department" before facility's closure]; Cal. Code Regs., tit. 22, §§ 66264.112, subds. (c)(2) & (4) [listing circumstances under which owner and DTSC may request modification of closure plan], 66264.142, subds. (b) & (c) [requiring adjustments in cost estimates for inflation and requests for modification of closure plan], 66264.144, subds. (b) & (c) [requiring adjustments in cost estimates for inflation and requests for modification of postclosure plan].) And while DTSC is correct separate financial assurance is also required for "corrective actions" (Cal. Code Regs., tit. 22, § 66264.101, subd. (c); see § 25200.10, subd. (b)) and "operation and maintenance activities" when

Chapter 6.8 applies to a hazardous waste facility (§ 25355.2, subd. (a)), none of these cited authorities provide for an increase in financial assurance once it has been set.

■ DTSC maintains that, not interpreting subpart (A) to give it discretion to refuse a responsible party's written request to transfer the cleanup from Chapter 6.5 to Chapter 6.8, "would lead to absurd consequences" because deadlines and requirements could be negated, and an enforcement action mooted, "with a last-minute" or "eve of trial" mandatory request. The contention lacks merit given DTSC's ability to issue another order under Chapter 6.8 with the same deadlines and requirements and the fact past violations of any Chapter 6.5 order would not relieve the responsible party from already-imposed penalties or incurring additional penalties and injunctive relief. (See § 25187, subd. (j).) Moreover, a court has discretion to allow an enforcement case to proceed notwithstanding an "eve of trial" request or may permit DTSC to amend the action to include a Chapter 6.8 order and authorize it to continue prosecuting the case with the same terms and requirements, resulting in little or no delay.

4. *Language of the Order*

The judgment includes a statement that under subpart (A), "a person who is alleged to be responsible for such a release has an absolute right to make a voluntary request in writing to the DTSC for the DTSC to issue an order transferring oversight of the assessment and cleanup of such a facility from Chapter 6.5 to Chapter 6.8 . . . , and upon receipt of such a voluntary request, the DTSC and its Director are under a mandatory duty to issue such an order." As to Soco in particular, it ordered a writ of mandate issued commanding DTSC "to issue an order transferring oversight of the assessment and cleanup of the facility . . . , including oversight of the assessment and cleanup of soil and/or groundwater contamination alleged to be existing and/or migrating from such facility, from Chapter 6.5 . . . to Chapter 6.8 . . . ." The court signed the judgment over DTSC's objection to the phrase "transferring oversight of the assessment and cleanup."

DTSC contends this was error because subpart (A) allowed Soco only to request it "issue an order . . . to take corrective action pursuant to Chapter 6.8" (§ 25187, subd. (b)(1)(A)), not transfer oversight. We agree and order the judgment be revised to substitute the correct phrase. As so corrected, we affirm.

## DISPOSITION

The judgment is ordered modified to delete the phrase "transferring oversight of the assessment and cleanup of the facility . . . , including oversight of the assessment and cleanup of soil and/or groundwater contamination alleged to be existing and/or migrating from such facility, from Chapter 6.5 . . . to Chapter 6.8" and to substitute the phrase "take corrective action pursuant to Chapter 6.8." As so modified, the judgment is affirmed. Respondent shall recover its costs on appeal.

Fybel, J., concurred.

**ARONSON, J.,** Concurring.—I concur with the majority's decision to affirm the judgment, as modified, based on the legislative history of Health and Safety Code section 25187, subdivision (b)(1).[1] That history shows the Legislature intended to give a responsible party, rather than defendant California Environmental Protection Agency, Department of Toxic Substances Control (DTSC), the option of choosing the cleanup program for a hazardous waste site under Health and Safety Code, division 20, chapter 6.8 (Chapter 6.8), rather than the proceedings under division 20, chapter 6.5 (Chapter 6.5). Accordingly, I agree DTSC lacked authority to deny plaintiff Soco West, Inc.'s (Soco) request to clean up its site under Chapter 6.8 rather than Chapter 6.5.

I, however, cannot agree with the majority's assertion the plain language of section 25187, subdivision (b)(1)(A), is unambiguous. Subdivision (b)(1) states DTSC shall pursue the remedies available under Chapter 6.5 before using the legal remedies available under Chapter 6.8 *unless* one of the exceptions set forth in subparts (A) through (F) applies. Subpart (A) sets forth the exception at issue and states DTSC is not required to pursue Chapter 6.5 remedies before pursuing Chapter 6.8 remedies when the responsible party requests in writing that DTSC order the party to take corrective action under Chapter 6.8.

As the majority points out, the statute's plain language unambiguously excuses DTSC from the duty to pursue remedies under Chapter 6.5 upon the responsible party's written request that the cleanup proceed under Chapter 6.8. But the statute is silent on whether DTSC must grant that request or whether DTSC has discretion to deny it. Indeed, other than excusing DTSC from first pursuing remedies under Chapter 6.5, the statute gives no guidance on how DTSC should proceed after a responsible party requests an order for corrective action under Chapter 6.8 instead of Chapter 6.5.

---

[1] All statutory references are to the Health and Safety Code.

The majority concludes the statute's plain language required DTSC to invoke Chapter 6.8's remedies after Soco made its written request, but the majority provides no explanation to support that conclusion. (Maj. opn., *ante*, at pp. 1513, 1515.) I find section 25187, subdivision (b)(1)(A)'s silence on whether DTSC had discretion to deny Soco's request renders the statute ambiguous on that issue and therefore we must examine the statute's legislative history to resolve that ambiguity. I base my concurrence in the majority's decision to affirm the judgment solely on the statute's legislative history.

A petition for a rehearing was denied March 29, 2013, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied June 12, 2013, S209841.