Filed 6/20/14  Marshall v. Bochner CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| ERMA MARSHALL,<br><br>  Cross-complainant and Appellant,<br><br>  v.<br><br>DAN Z. BOCHNER,<br><br>  Cross-defendant and Respondent. | D065617<br><br><br><br>(Super. Ct. No. SCVSS142008) |

APPEAL from a judgment of the Superior Court of San Bernardino County, John M. Pacheco, Judge.  Affirmed.

Greta S. Curtis for the Cross-complainant and Appellant.

Julian Karl Bach for the Cross-defendant and Respondent.

Cross-complainant and appellant Erma Marshall appeals from a judgment on the pleadings in favor of cross-defendant and respondent Dan Z. Bochner (Bochner) on the cross-complaint of Marshall and her husband, James Marshall (James), for declaratory relief, injunctive relief, and an accounting arising from a loan Bochner made to the Mt. Zion Missionary Baptist Church (Church) that was secured by Church's real property and the Marshalls' residence.  In his motion, Bochner argued that various events, including a

settlement agreement he had entered into with the trustee of Church's bankruptcy estate, had rendered the Marshalls' claims moot and none of the claims stated a cause of action.

Marshall contends the trial court denied her due process by declining to allow her to file a first amended cross-complaint, which she asserts would have stated facts sufficient to state a cause of action for declaratory relief. She also contends the court erred by granting judgment on the pleadings because Bochner's motion was untimely and directed to the wrong complaint. Finally, she contends the court made a "fatal" evidentiary error by taking judicial notice of an unlawful detainer judgment that affected her right to a fair hearing. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND[1]

*Bochner's Loan to Church and Underlying Action*

In November 2005, Bochner made a $1,323,000 loan to Church secured by real property located on Del Rosa Avenue in San Bernardino, California (the Church

---

[1] We state the factual and procedural background from the limited documents in the record, including the San Bernardino County Superior Court's register of actions in *Thomas v. Elliot* (Super. Ct. San Bernardino County, 2012, No. SCVSS142008). Bochner has asked us to take judicial notice of a federal court action filed by the Marshalls during the pendency of this appeal. He concedes that none of the documents attached to his request were before the trial court, but maintains they are relevant because the original and first amended complaints in the federal action are virtually identical, and the district court granted Bochner's motion to dismiss as to both. We decline to take judicial notice of matters that were not before the trial court. (See *Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2 [" '[r]eviewing courts generally do not take judicial notice of evidence not presented to the trial court' absent exceptional circumstances"]; *Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP* (2010) 184 Cal.App.4th 313, 332, fn. 9 [declining to take judicial notice of materials not before the trial court].) Bochner has not shown exceptional circumstances, and thus we will not deviate from this rule.

2

property).  The loan was also secured by trust deeds recorded against other church members' homes, including the Marshalls' Colorado Avenue home.  In September 2006, Church member Floyd Thomas filed a quiet title action against Church, Bochner, and another individual.  Thomas filed a first amended complaint in October 2006 including causes of action for conspiracy to commit fraud, elder financial abuse, cancellation of instrument, and usury.  In April 2007, the trustee, Reliable Trust Deed Services (Reliable), issued a notice of trustee's sale for the Marshalls' Colorado Avenue property.

*The Marshalls' Cross-Complaint*

In May 2007, Church and the Marshalls cross-complained in Thomas's action.[2] The cross-complaint contained three causes of action against Bochner and Reliable seeking (1) a judicial declaration regarding their respective interests in the Church property and the Marshalls' residence; (2) to enjoin the pending trustee's sale of the Church property and Marshalls' residence; and (3) an accounting of money Bochner owed to the Marshalls.  The cross-complaint sought attorney fees, costs and other "appropriate relief" under the Truth in Lending Act (15 U.S.C. § 1640 et seq.).

That same month, Church filed a Chapter 11 bankruptcy proceeding and it and others filed a notice of removal of Thomas's action to the bankruptcy court.  In December 2008, the bankruptcy court granted the bankruptcy trustee's partial motion for summary judgment, ruling Bochner's loan to Church bore a usurious interest rate.  Thereafter,

---

[2]     Both Erma and James Marshall were named cross-complainants below and they both prosecuted the action represented by the same counsel.  For ease of reference on this appeal, we refer to the cross-action as Erma Marshall's action.

3

Bochner elected to settle with the bankruptcy trustee. Under the January 2009 settlement agreement, Bochner and the bankruptcy trustee agreed to modify the terms of the note to waive all past due amounts, reduce the interest rate, and provide for a default interest rate. They specified new monthly interest-only payments to repay the obligation. The bankruptcy trustee, on behalf of Church's bankruptcy estate, released all claims "of whatever kind or nature, whether legal or equitable, known or unknown, suspected or unsuspected, contingent or fixed, secured or unsecured, arising out of or related to any matter whatsoever, from the beginning of time to the date of this Agreement." Bochner similarly released Church's bankruptcy estate, the trustee and the trustee's agents, attorneys and employees from all claims, but the agreement did not "affect Bochner's rights against the Debtor under the Promissory Note (as amended and modified by . . . [the settlement] Agreement) and the Deed of Trust." In March 2009, the bankruptcy court approved the settlement agreement and dismissed the bankruptcy case. The parties stipulated to dismiss with prejudice the bankruptcy estate's usury claim against Bochner.

In June 2009, counsel informed the superior court that the bankruptcy proceeding had been dismissed and the court set the matter for an order to show cause regarding dismissal of the cross-complaint. The matter of Church and Marshall's cross-complaint was eventually remanded to the San Bernardino superior court, where Church and Marshall unsuccessfully sought to obtain a default judgment against Bochner. In December 2009, Bochner answered Marshall's cross-complaint.

In July 2010, Bochner foreclosed on the Church property. In January 2011, he reconveyed to the Marshalls the trust deed on their property. In February 2011, Bochner

4

obtained an unlawful detainer judgment against Church.[3]  Before Bochner obtained that judgment, Church and Marshall filed a notice of removal of the unlawful detainer action to the bankruptcy court, but shortly thereafter the bankruptcy judge remanded the case to the superior court.

*Marshall's Motion for Leave to Amend*

In February 2011, the case was set on the trial readiness calendar for April 2011. In March 2011, Marshall moved for leave to file a first amended cross-complaint adding causes of action for conspiracy to commit fraud, negligent misrepresentation, usury, "RICO conspiracy," cancellation of instrument, elder abuse and declaratory relief.  In part, she sought to add allegations that Bochner conspired with his agent, Rolando DeArmas, to induce the Marshalls to execute a deed of trust on their residence as security for his purchase loan; that DeArmas told them the legal documents they signed would not cause their homes to be used as collateral for the Church property, and with that representation they signed the promissory notes and trust deed without making any

---

[3]      Marshall objected below to Bochner's request, in connection with his motion for judgment on the pleadings, that the trial court judicially notice the unlawful detainer judgment on grounds it was unsigned and therefore inadmissible.  On appeal, she asserts for the first time based on Evidence Code section 1200 and *Ramsden v. Western Union* (1977) 71 Cal.App.3d 873, that an unsigned judgment is impermissible hearsay.  Setting aside Marshall's forfeiture of the point for the absence of a hearsay objection below (Evid. Code, § 353, subd. (a)), *Ramsden* merely confirms that a court " ' "may take judicial notice of the *existence* of each document in a court file" ' " and also the " ' "truth of facts asserted in documents such as orders, findings of fact and conclusions of law, and judgments." ' "  (*Ramsden*, at p. 879.)  It does not address unsigned judgments or stand for the proposition that an unsigned judgment is inadmissible hearsay that cannot be judicially noticed.  In any event, Marshall has not demonstrated she suffered prejudice from any assumed error, which is fatal to her evidentiary challenge.  (See *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 105.)

personal guarantee. Marshall sought to allege that DeArmas did not provide them with the documents they signed, and that it was not until July 2006, when a notice of default was posted at their residence, that they learned they had signed a deed of trust pledging their residence as collateral. Marshall argued the amendment was "to cure a failure to plead a compulsory claim" under Code of Civil Procedure sections 426.50, 473, subdivision (a)(1) and 576; that she was precluded from bringing the additional causes of action because Bochner had concealed the promissory note and usurious loan terms, and she did not realize she had a claim for usury until the bankruptcy court made a judicial determination that the loan was usurious. Marshall argued amendment was proper because the new causes of action were based on the same set of facts, and she would lose the opportunity to assert a usury cause of action if the court denied leave to amend.

Bochner opposed the motion, arguing in part that it was untimely, without merit, did not comply with applicable law, and did not state any viable claim against him. He asserted the proposed pleading was "an entirely new pleading with new allegations" requiring the need for extensive discovery. Bochner asked the trial court to judicially notice, among other things, documents pertaining to the bankruptcy proceedings and unlawful detainer, as well as Thomas's October 2006 first amended complaint.

Granting Bochner's request for judicial notice in part,[4] the trial court denied Marshall's motion. It found Code of Civil Procedure section 426.50 pertaining to

---

[4]     The trial court denied Bochner's request that it take judicial notice of Thomas's October 2006 first amended complaint. Despite that ruling, the court proceeded to recite the allegations of that pleading to demonstrate how its allegations and causes of action

6

compulsory cross-complaints inapplicable, as Marshall's cross-complaint was not against

Thomas, but Bochner. Referring to the allegations of Thomas's first amended complaint,

the court pointed out Marshall's proposed amended complaint was "almost identical" and

that it was thus "hard to believe that [Marshall] did not know of the facts or allegations

made against Bochner, DeArmas and Reliable Trust at least as of October 2006." The

court agreed that the allegations in Marshall's proposed cross-complaint made "totally

different" claims against Bochner, requiring additional discovery in the already five-year-

old matter. The court ruled the causes of action for usury and cancellation of instrument

were "improper" because Church had received a judgment and the matter was settled

between Bochner and the trustee of the Church's bankruptcy estate, and Bochner had

foreclosed on the Church property and obtained an unlawful detainer judgment, which

had res judicata effect on subsequent claims of fraud or quiet title founded on allegations

of the same irregularities in the trustee's sale. The court ruled the seventh cause of action

were almost identical to those in Marshall's proposed first amended cross-complaint. Marshall does not challenge the similarities between the proposed first amended cross-complaint and Thomas's October 2006 first amended complaint. Indeed in the latter pleading, Thomas had alleged, similar to Marshall's proposed pleading, that Bochner was a " 'hard money' " lender who employed DeArmas as his agent; that Bochner, DeArmas and others "conspired to" and "fraudulently induce[d]" him to execute a deed of trust that allegedly pledged his residence as collateral, and "affirmatively misrepresented the nature and purpose of the documents" that he signed, as well as concealed the material fact that they intended to use the deed of trust as pledging his residence as collateral for the Church loan. Thomas alleged Bochner, DeArmas and others committed financial abuse of an elder by "conspiring to fraudulently induce and fraudulently inducing [him] to execute a deed of trust and promissary [*sic*] note whose effect was to pledge [his] residence as the additional and final real property collateral necessary to secure [Church's] acquisition of a hard money loan from Bochner to purchase the . . . Church property . . . ." (Some capitalization omitted.)

7

for declaratory relief was moot given the settlement agreement and unlawful detainer judgment, which answered the parties' obligations under the promissory note and its interest rate, as well as whether Reliable was entitled to foreclose on the Church property.[5]

Months later, Marshall filed a pleading entitled "notice of filing of first amended cross-complaint filed in federal court on 12/20/10 inadvertently omitted by [Bochner] on remand of case to superior court." (Capitalization omitted.) On October 31, 2011, the superior court ruled the notice was untimely and Marshall was required to obtain leave of court to file such a pleading but did not. The court pointed out that it had previously denied her motion for leave to file a first amended cross-complaint.

---

[5] More fully, the court ruled: "The 3rd cause of action for Usury against Bochner is improper because judgment was entered in favor of [Church's] estate and then by settlement between the Trustee of [Church's] estate and Bochner. . . . [Marshall] argues that the Trustee had no authority to enter into any settlement because he had abandoned any interest in the real property. . . . However, because the exhibit fails to include the second page it is unclear what exactly was abandoned. Also, the abandoning of any interest in the real property is different than abandoning the right to collect damages related to payment on a [usurious loan]. [¶] The 5th cause of action for cancellation of instrument (i.e. the Trust Deed on the Church Property) . . . also appears to be improper. The Church Property has been foreclosed upon by Bochner. In [an unlawful detainer] [l]itigation, the Court entered judgment ordering possession of the Church Property to Bochner. . . . To obtain the [unlawful detainer] judgment, Bochner must have established that the foreclosure sale was done in conformance with [Civil] Code [section] 2924. . . . The California Supreme Court has stated that an unlawful detainer judgment will have res judicata effect for subsequent claims of fraud or quiet title suits founded on the same allegations of irregularities in a trustee's sale." [¶] . . . [¶] Finally, the 7th cause of action for Declaratory Relief is moot. The [first amended cross-complaint] alleges a controversy exists between the parties related to what obligations [Marshall] is obligated to pay . . . Bochner under the Promissory Note; the interest rate under the Note being usurious; and whether Reliable was entitled to foreclose on the Church Property. . . . However, as stated above, the Settlement Agreement and [unlawful detainer] Litigation answered these matters."

8

*Bochner's Motion for Judgment on the Pleadings*

On December 20, 2011, Bochner moved for judgment on the pleadings as to Marshall's cross-complaint. He argued Marshall's claims for declaratory relief, injunctive relief and an accounting were rendered moot because (1) Bochner had foreclosed on the lien he held on the Church property and its possession had been resolved in the unlawful detainer action; (2) Bochner had reconveyed the lien against the Marshalls' Colorado Avenue residence; and (3) all of the accounting issues regarding the loan to Church had been fully resolved in the settlement agreement between Bochner and the bankruptcy trustee for Church's bankruptcy estate while Church was a debtor in bankruptcy. Bochner asserted an actual controversy no longer existed on which a judgment could operate, and the court could not grant effective or appropriate relief to Marshall. Bochner asked the court to take judicial notice of, among other things, the January 2011 substitution of trustee and full reconveyance of the Marshalls' deed of trust, and the February 1, 2011 unlawful detainer judgment against Church.

Marshall opposed Bochner's motion for judgment on the pleadings by arguing the motion was untimely and filed without leave of court; Bochner did not meet his burden on the motion; the unlawful detainer judgment was inadmissible as unsigned and uncertified; and her cross-complaint alleged facts showing an actual controversy regarding the parties' rights and duties relating to the promissory note and deeds of trust, as well as Marshall's entitlement to attorney fees, permitting the declaratory relief action to proceed.

9

After issuing a tentative ruling, hearing argument and taking the matter under submission, the court granted the motion. It thereafter entered judgment in Bochner's favor. Marshall appeals from the judgment.

## DISCUSSION

### I. *Marshall's Due Process Claim*

In a somewhat disjointed series of arguments, Marshall contends the trial court denied her due process by not permitting her to file the proposed first amended cross-complaint, which she points out was predicated on the same facts as Thomas's October 2006 first amended complaint. She maintains the court "impermissibly considered the validity of the proposed first amended cross-complaint in the form of a [premature] demurrer" and thus she was denied the opportunity to address the issues raised by the court in denying her motion. In a related argument, Marshall asserts she did not address certain factual issues (i.e., her knowledge of the validity or usurious nature of the loan stemming from a purportedly forged signature) in her motion for leave to amend because she was unaware the court would consider the validity of the pleadings sua sponte.

Marshall's due process claim is without merit. "Due process is the opportunity to be heard at a meaningful time and in a meaningful manner. [Citation.] Unlike some legal rules, due process ' "is not a technical conception with a fixed content unrelated to time, place and circumstance." [Citation.]' [Citation.] Rather, it ' "is flexible and calls for such procedural protections as the particular situation demands." ' " (*Southern Cal. Underground Contractors, Inc. v. City of San Diego* (2003) 108 Cal.App.4th 533, 543.)

10

The record simply does not show the trial court sua sponte considered the merits of Marshall's proposed first amended cross-complaint. In opposition to her motion for leave to amend, Bochner raised arguments challenging the merits and mootness of Marshall's claims in light of undisputed events. In particular, he pointed out all claims as to the usurious nature of the promissory note were settled, and the note modified in the bankruptcy settlement. He argued that Marshall's cancellation of instrument cause of action was an attempt to undo the July 2010 foreclosure sale, which was ratified by the subsequent unlawful detainer judgment. He pointed out that any request for a judicial declaration concerning the promissory note to Church, as well as any disputes concerning the note's validity and interest rate, had been resolved in the Bankruptcy Court, and any challenge by Marshall concerning the note should have been made before the July 2010 foreclosure. Marshall had a full and fair opportunity to, and in fact did, reply to these arguments.

Accordingly, Marshall should not have been surprised by the court's ruling on the merits of the some of the claims within the proposed first amended cross-complaint. And the court was within its purview in reaching the merits. Taking judicial notice of the bankruptcy settlement agreement, as well as the unlawful detainer judgment, it was entitled to assess the merits of Marshall's claims in view of undisputed procedural events. (See *Huff v. Wilkins* (2006) 138 Cal.App.4th 732, 746 ["Leave to amend is properly denied when the facts are undisputed and as a substantive matter no liability exists under the plaintiff's new theory."]; *Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217, 230 ["[I]f the proposed amendment fails to state a cause of action, it is proper to deny leave to

11

amend."]; *Oakland Raiders v. National Football League* (2005) 131 Cal.App.4th 621, 654 [court properly denied leave to amend where proposed new claims "were without merit as a matter of law"].) The circumstances here are unlike those in *Kittredge Sport Co. v. Superior Court* (1989) 213 Cal.App.3d 1045, relied upon by Marshall, in which the trial court was held to have abused its discretion in denying leave to amend where the plaintiff had made required allegations in its pleading and the defendant's opposition "merely raise[d] a factual dispute to be resolved by a jury." (*Id*. at pp. 1047-1048.)

Furthermore, Marshall's due process argument overlooks those aspects of the trial court's ruling that did not address the merits of the proposed new causes of action. As stated, the court ruled Marshall's motion was untimely and would result in prejudice because she waited years to advance entirely new causes of action based on new facts and against new cross-defendants. If this was a proper ground in and of itself to deny leave to amend, it is immaterial that the court proceeded to assess the merits of some of Marshall's proposed new causes of action. We review the correctness of a trial court's result, not its rationale. (*Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 443; [" 'We uphold judgments if they are correct for any reason, "regardless of the correctness of the grounds upon which the court reached its conclusion." ' "]; *Davey v. Southern Pacific Co.* (1897) 116 Cal. 325, 329 ["[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason."].)

Marshall's delay in presenting her amendment—a delay Marshall does not justify or explain on appeal except for the pendency of the bankruptcy proceeding—and the resulting prejudice to Bochner by the entirely new factual allegations of fraud and "elder

12

abuse," was indeed sufficient ground by itself to deny her motion. (See *M & F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc.* (2012) 202 Cal.App.4th 1509, 1534 ["[I]f a party seeking amendment has been dilatory and/or the delay has prejudiced or will prejudice the opposing party, the trial court in its discretion may deny leave to amend."]; *P&D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1345 [" ' " [E]ven if a good amendment is proposed in proper form, unwarranted delay in presenting it may—of itself—be a valid reason for denial [of leave to amend].' " ' "]; see also *Magpali v. Farmers Group, Inc.* (1996) 48 Cal.App.4th 471, 488 [denial of leave to amend upheld where the plaintiff gave no explanation for seeking leave to amend on the eve of trial, nearly two years after their original complaint was filed].) If Marshall inexcusably delayed to Bochner's prejudice, her motion was properly denied, even if her amendment was proposed in proper form. (*Huff v. Wilkins*, *supra*, 138 Cal.App.4th at p. 746.)

As for her diligence in seeking amendment, it appears Marshall's sole argument on this point relates to the pending bankruptcy proceeding. In connection with an argument that she did not act in bad faith in proposing her amendment, Marshall states: "The complaint was removed to the bankruptcy court on July 17, 2007[,] which resulted in a stay of the [five-year] period to bring the matter to trial. . . . During this same time period the Petitioners could not amend the cross-complaint in state court because the action was removed to federal court which divested the state court of jurisdiction. . . . Upon remand the court allowed cross-defendant to set aside his default and file an answer

13

to the complaint and cross-complaint on February 1, 2010 [*sic*]."[6]  She cites *In re Princess Louise Corp.* (Bankr. C.D.Cal. 1987) 77 B.R. 766, 771, as well as section 1452 of title 28 of the United States Code.[7]  Marshall also argues under a separate heading that the five-year period to bring the action to trial was tolled by the bankruptcy.  The latter argument is supported only by a citation to Code of Civil Procedure section 583.340, subdivisions (a) and (b), under which the five-year period is tolled when a stay encompasses *all* proceedings in an action.  (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 726.)

The record does not contain the notice of removal by Church and Marshall, which according to the register of actions, was filed on August 17, 2007.  In *In re Princess Louise Corp.*, the bankruptcy court pointed out that section 1452 of title 28 of the United States Code, the bankruptcy removal statute, "provides flexibility to the removing party

---

6    In fact, Bochner's answer is file-stamped December 2009.  In her reply papers to Bochner's opposition to the motion to amend, Marshall did not make an argument concerning the bankruptcy stay.  She merely argued that Bochner's default caused her delay: that he was "in default in this matter until February 10, 2010," and "was in default for over three years by choice."  At oral argument on Marshall's motion, her counsel argued that the matter was stayed by the bankruptcy proceeding, and that Marshall could not file a first amended cross-complaint during that period.

7    Title 28 United States Code section 1452(a) provides:  "A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."  Section 1334 of title 28 of the United States Code is the basic jurisdictional statute for bankruptcy cases and related proceedings.  (*In re Eyecare of Southern California* (Bankr. C.D.Cal. 2001) 258 B.R. 765, 768.)

14

that is not available for the non-bankruptcy removal to federal district court. [Title 28 United States Code] [s]ection 1452 permits the removing party to select those claims or causes of action to be removed, and to leave the remainder for litigation in state court. Alternatively, the removing party may choose to remove all claims or causes of action from the state court, thereby depriving the state court of all further jurisdiction until such time as there may be a remand." (*In re Princess Louise Corp.*, *supra*, 77 B.R. at p. 771.) Further, "the scope of what is removed from state court to the bankruptcy court is determined by the removal petition. If the removal petition extends to the entire state court action, the entire state court action is removed to the bankruptcy court." (*Ibid.*) Thus, where a removal petition requests removal " 'of the state court litigation' to the bankruptcy court," the state superior court will be completely ousted of jurisdiction with respect to the case that was pending before it. (*Ibid.*)

Because we are without the removal petition, we cannot assess the scope of the removal and whether it extended to Marshall's cross-complaint or the entire action, or decide if the petition entirely divested the superior court of jurisdiction. (*In re Princess Louise Corp.*, *supra*, 77 B.R. at p. 771.) Marshall's bare assertion that the state court was divested of jurisdiction is not enough. This is particularly true where the registrar of actions shows Marshall continued to file papers in state court *after* filing the removal petition; on August 20, 2007, she filed a request to enter Bochner's default, and her counsel argued to the superior court in August 2009 that the "removal to federal court was for the defendant [Church] . . . ." Because we draw all inferences in favor of the orders and judgment before us (*Estate of Leslie* (1984) 37 Cal.3d 186, 201), we infer that

15

the superior court was *not* entirely divested of jurisdiction, and will not disturb its finding that Marshall's cross-action had been pending for almost five years.

Even assuming the August 2007 removal entirely divested the superior court of jurisdiction, the fact remains that on June 22, 2009, counsel informed the superior court that the bankruptcy proceeding had been dismissed and the court set the matter for an order to show cause regarding dismissal of the cross-complaint. Yet, it was not until March 2, 2011, one year and nine months later, and after the case was set on the trial readiness calendar, that Marshall moved for leave to amend the cross-complaint. Marshall does not explain that delay, and she does not otherwise meaningfully address whether she was reasonably diligent in proposing her first amended cross-complaint or why the trial court erred by finding otherwise.

Marshall further argues that Bochner was not prejudiced by the proposed amended pleading because "he knew about the defect for over five years and made no move to raise the issue [via his motion for judgment on the pleadings] until two . . . weeks before the trial date." The question in reviewing the trial court's order denying leave to amend, however, is not whether Bochner timely challenged Marshall's operative pleading, but whether *Marshall* exercised reasonable diligence in seeking leave to amend. (See *M & F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc.*, *supra*, 202 Cal.App.4th at p. 1534; *P&D Consultants, Inc. v. City of Carlsbad*, *supra*, 190 Cal.App.4th at p. 1345; *Magpali v. Farmers Group, Inc.*, *supra*, 48 Cal.App.4th at p. 488.)

Marshall maintains Bochner did not argue surprise or the need to conduct additional investigation in opposition to her motion, and she argues he was not surprised

16

or required to conduct additional investigation because the causes of action were identical to Thomas's first amended complaint. Marshall's characterization of Bochner's opposition, however, is not supported by the record. Bochner specifically argued that Marshall's motion for leave to amend was untimely and based on facts known to Marshall at the time she filed her original cross-complaint because the newly proposed pleading had copied allegations from Thomas's first amended complaint filed in October 2006. Bochner argued it would be " 'patently unfair' to allow a pleading to be amended at the 11th hour on facts known at the time of the operative complaint." Bochner also specifically argued he would be prejudiced if the motion were granted since the proposed first amended cross-complaint added entirely new causes of action with new allegations seeking to state claims for conspiracy to commit fraud, negligent misrepresentation, usury, RICO, elder abuse, and cancellation of instrument. He argued "[e]xtensive discovery," including the depositions of both Erma and James Marshall, as well as a demurrer, would be required to address those claims.

Because Marshall denies that Bochner made arguments sounding in prejudice and delay, she does not address them on appeal. Specifically, she does not explain how the trial court erred by concluding, implicitly if not expressly, that she knew or should have known of the facts underlying the proposed new causes of action (namely, the terms of their promissory note, the usurious interest rate on the loan, and the alleged fact that the loan documents were secured through misrepresentations by Bochner and his agent, DeArmas) as of October 2006, when Thomas filed his first amended complaint making the same allegations. Marshall does not challenge in any way Bochner's assertion, which

17

the trial court accepted, that he would have to depose the Marshalls and other witnesses to defend against these new claims. To the contrary, Marshall embraces the trial court's finding, but argues it means Bochner was not prejudiced because he was aware of the allegations. Marshall misses the point that it was a different party, Thomas, who made those allegations and claims, not her; Bochner cannot be expected to be prepared to defend against allegations and claims she did not assert until years after Thomas filed his pleading.

We observe Marshall argues she possessed a usury claim against Bochner "separate and distinct from the [Church] bankruptcy estate" and sought to recover payments on the usurious loan as well as damages "for interference with [her] right to own [her] home without a 'void' encumbrance or disparagement of [her] title." Citing Code of Civil Procedure sections 1060 and 1062, Marshall states: "A party who has paid any greater sum or value that is allowed by law may bring an action in equity for declaratory relief to declare the interest provisions of the contract void." The sole support for Marshall's claim of a distinct usury action is a clause in the bankruptcy settlement agreement specifying that the releases are between Bochner and the bankruptcy trustee, and providing Marshall's rights and claims or defenses against Bochner survive that agreement. But these cursory points address the merits of Marshall's proposed causes of action within the first amended complaint, and do not assist us in deciding whether the court afforded her due process in connection with her motion, or abused its broad discretion in denying leave to amend on grounds of undue delay and prejudice.

18

"Generally, leave to amend must be liberally granted [citation], provided there is no statute of limitations concern, nor any prejudice to the opposing party, such as delay in trial, loss of critical evidence, or added costs of preparation." (*Solit v. Tokai Bank, Ltd. New York Branch* (1999) 68 Cal.App.4th 1435, 1448.) " ' "[T]he trial court has wide discretion in allowing the amendment of any pleading [citations], [and] as a matter of policy the ruling of the trial court in such matters will be upheld unless a manifest or gross abuse of discretion is shown." ' " (*Huff v. Wilkins*, *supra*, 138 Cal.App.4th at p. 746.) The discretion is that of the *trial court*, and so even if this court might have ruled otherwise in the first instance, the order will not be reversed unless, as a matter of law, it is not supported by the record. (*M & F Fishing, Inc. v. Sea-Pac Ins. Managers, Inc.*, *supra*, 202 Cal.App.4th at p. 1534.)

Absent a meaningful challenge to the trial court's ruling that Marshall's request for leave to amend was both untimely and caused prejudice to Bochner due to the new factual allegations that would require extensive discovery, we have no basis to conclude the court abused its broad discretion in denying Marshall leave to file her first amended cross-complaint. Having reached that conclusion, we need not address Marshall's contention that she alleged facts in the first amended cross-complaint sufficient to state a cause of action for declaratory relief.[8]

---

[8] Marshall's argument concerning the validity or necessity of declaratory relief is meritless in any event. It includes for the most part unsupported factual and legal assertions. For example, Marshall argues she "made interest only payments on the [Church]/Bochner loan." She argues "[t]he cross-collateralization of the [Church]/Bochner loan with the Petitioner's home gave [her] a separate and distinct usury

19

## II. *Judgment on the Pleadings*

Marshall challenges the court's grant of judgment on the pleadings on two rather limited grounds. First, she contends Bochner's motion was untimely; that under Code of Civil Procedure section 438 such a motion must be made before entry of the pretrial conference order or 30 days before the initial trial date, whichever is later. She asserts that because the initial trial date was February 7, 2011, the deadline for the motion expired on January 7, 2011. The record shows that Bochner's motion for judgment on the pleadings was filed before that date, on December 20, 2011, and heard on January 24, 2012.

Subdivision (e) of Code of Civil Procedure section 438 provides that "[n]o motion [for judgment on the pleadings] may be *made . . .* if a pretrial conference order has been entered pursuant to Section 575, or within 30 days of the date the action is initially set for trial, whichever is later, unless the court otherwise permits." (Italics added.) Presumably, the premise of Marshall's argument is that Bochner's motion was untimely because the court did not rule on it before January 7, 2011. That argument turns on whether the word "made" within the statute means "heard" or "decided" as opposed to

claim against the cross-defendant." She argues a judicial declaration of the nature and scope of the reformation of the usurious contract is warranted because any reformation required all parties, including her and James, to sign the settlement agreement. None of these arguments is accompanied by citation to the record, case law or statutory authority, nor does Marshall explain how she individually became obligated on the November 2005 promissory note, which was between Church and Bochner. Second, Marshall misrepresents the record when she argues the "bankruptcy court totally modified the note, not just the interest rate." It was the trustee of Church's bankruptcy estate and Bochner who modified the terms of the note in connection with their settlement, which was then approved by the bankruptcy court. Marshall does not point out if she objected to any these events before they occurred.

20

"filed" or "brought."[9]  But Marshall does not present us with any construction of the statute's language, or explain with any meaningful authority or analysis why Bochner's motion, which was filed before the asserted January 7, 2011 deadline, was not timely "made" within the meaning of the statute.  The point is thus forfeited.  (*City of Riverside v. Horspool* (2014) 223 Cal.App.4th 670, 683.)  In view of the appellate presumptions that the court followed applicable law and of the judgment's correctness (*Cahill v. San Diego Gas & Elec. Co.* (2011) 194 Cal.App.4th 939, 956), we cannot say Marshall has demonstrated the court erred by accepting the motion for filing, or, even assuming it was untimely filed, that she was unable to respond or prejudiced in any other way by the court's consideration of the motion.

Marshall next contends Bochner's motion was directed to the "wrong complaint." She asserts she had filed the first amended cross-complaint in response to the unlawful detainer action while that action was removed to bankruptcy court, as evidenced by their identical adversary case number.  For this proposition, Marshall points only to the face of the first amended cross-complaint that she had unsuccessfully attempted to file in the superior court after the superior court denied her motion for leave to amend.  Marshall argues the trial court erred when it ruled that she did not obtain the bankruptcy court's

---

9     We observe that courts in other states have construed the word "made" in statutes pertaining to the making of motions to mean "filed."  (See *Schmid Bros., Inc. v. Roberts* (Me. 1988) 538 A.2d 291, 292; *Hilt v. Young* (Ga. 1902) 43 S.E. 76, 77 [involving a motion for new trial; "The word 'made,' as used in the statute, is synonymous with 'filed.' "].)  In *Schmid*, the statute required a motion to vacate a default judgment to be " '*made* within a reasonable time . . . .' "  (*Schmid*, 538 A.2d at p. 292, fn. 1.)

21

permission to file it. For this, she cites to the court's October 31, 2011 minute order regarding her notice of filing the first amended cross-complaint.

Marshall's "wrong complaint" contention fails for several reasons. First, it was not made in the trial court in opposition to Bochner's motion for judgment on the pleadings. And understandably so, because the superior court no doubt would have considered it an end run around at least two prior court orders. By the time Bochner moved for judgment on the pleadings, Marshall had made two unsuccessful attempts to file her first amended cross-complaint in the superior court. An argument that Bochner should have directed his request for judgment on the pleadings on an amended cross-complaint twice rejected for filing would have been patently meritless. Nevertheless, we will not consider claims made for the first time on appeal which could have been, but were not, presented to the trial court. (*Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11.) "Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider." (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178.)

Second, Marshall does not support the claim of error with meaningful legal analysis or case authority. It is not enough for Marshall to merely assert, without more, that the court erred because rule 15 of the Federal Rules of Civil Procedure (28 U.S.C.) is "not applicable," or that the commencement of an adversary proceeding in bankruptcy is governed by Bankruptcy Rule 7003. The contention thus fails for the absence of cogent legal argument with citation to legal authority. (Cal. Rules of Court, rule 8.204(a)(1)(B),

22

(C); *Sims v. Department of Corrections & Rehabilitation* (2013) 216 Cal.App.4th 1059, 1081.)  Absent these required matters, the point is forfeited.  (*Ibid.*; *People v. Stanley* (1995) 10 Cal.4th 764, 793.)  We observe that Bochner responds on the merits.  He maintains that under rule 15(a) of the Federal Rules of Civil Procedure (28 U.S.C.), the 21-day period within which Marshall could have filed an amended pleading without leave of the bankruptcy court had elapsed years earlier, and her failure to either obtain his consent or leave of court rendered the pleading without legal effect.  We need not decide the merits of this argument in view of Marshall's forfeiture of it.

Nor do we need to undertake the normal inquiry on review of a judgment on the pleadings, that is, whether Marshall's cross-complaint states any viable cause of action. (*Arce v. County of Los Angeles* (2012) 211 Cal.App.4th 1455, 1483, fn. 16; *Soco West, Inc. v. California Environmental Protection Agency* (2013) 213 Cal.App.4th 1511, 1514.) This is because Marshall does not refer to the allegations of her cross-complaint or attempt to explain how its allegations are sufficient to state viable causes of action against Bochner for declaratory or injunctive relief, for an accounting, or for any other cause of action.  Though appellate review is de novo following the grant of a judgment on the pleadings, that does not mean our role is to review the adequacy of the cross-complaint's allegations and make Marshall's arguments for her.

## DISPOSITION

The judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

HUFFMAN, Acting P. J.

IRION, J.