[No. C066663. Third Dist. Mar. 3, 2012.]

CITY OF SUSANVILLE et al., Plaintiffs and Respondents, v.
DEPARTMENT OF CORRECTIONS AND REHABILITATION et al.,
Defendants and Appellants.

378

**COUNSEL**

Kamala D. Harris, Attorney General, Douglas J. Woods, Acting Assistant Attorney General, Constance L. LeLouis and Anthony P. O'Brien, Deputy Attorneys General, for Defendants and Appellants.

Peter Talia, City Attorney, and Traci L. Witry, Deputy County Counsel, for Plaintiffs and Respondents.

## OPINION

**RAYE, P. J.**—After Loren Herzog completed his sentence for voluntary manslaughter and accessory to three murders, California's Department of Corrections and Rehabilitation (Department) was faced with the onerous and thankless task of finding a suitable parole placement for him, made all the more difficult by statutory restrictions on where he could live and by public outcry against placement anywhere. Ultimately, the Department provided Herzog a trailer located within a fenced-in compound on the grounds of High Desert State Prison and imposed severe restrictions on his movement. The City of Susanville and the County of Lassen filed a petition for a writ of mandamus to remove Herzog. The trial court ruled that his placement in Lassen County was not in the best interests of the public and ordered the Department to transfer Herzog out of Lassen County forthwith. The Department appeals.

Following oral argument in this matter, the Department informed the court of the parolee's death. We requested the parties to provide letter briefs on the question of whether the death rendered the appeal moot. The Department argues the parolee's death prevents the court from providing any relief in this matter and the issues are not likely to recur. The county disagrees, as do we.

The controversy in this matter was created by Herzog's placement in Lassen County; a change in placement is sought. Obviously, the change wrought by his death renders any change by court order futile. "However, when a pending case involves a question of broad public interest which is likely to recur between the same parties or others, 'the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot.' (*In re William M.* (1970) 3 Cal.3d 16, 23 [89 Cal.Rptr. 33, 473 P.2d 737]; see also *In re Jeanette H.* (1990) 225 Cal.App.3d 25, 29–30 [275 Cal.Rptr. 9].)" (*State Bd. of Education v. Honig* (1993) 13 Cal.App.4th 720, 742 [16 Cal.Rptr.2d 727].) As difficult and controversial as the issues raised by this case may seem to the public officials confronted by them, and as tempting as it might be to avoid them, there is no doubt that issues of this type will recur. The statutory restrictions imposed upon the placement of parolees, along with the public outcry that inevitably attends the placement of high profile parolees, assure that the issues will arise again. For that reason we choose to confront the issues raised by the trial court's judgment and decline to dismiss the appeal as moot.

The question posed by the appeal is whether the Department's placement was so palpably unreasonable and arbitrary as to constitute an abuse of discretion as a matter of law. Finding no abuse of discretion, we must reverse

the judgment. Neither the city, the county, nor the court can interfere with the Department's exclusive discretion to determine a parole placement according to the statutory criteria and notice requirements set forth in Penal Code sections 3003 and 3058.6.[1]

## FACTS

In July 2010 the Division of Adult Parole Operations received notice that on September 18, 2010, Loren Herzog would complete his sentence for voluntary manslaughter and accessory to three murders. The Department began the process of deciding where to parole Herzog.

Because Herzog had last lived in San Joaquin County, the Department first selected San Joaquin as his parole placement. Seventeen victims and witnesses complained about the placement, an unusually high number of complaints. The Department investigated each complaint and determined that some of them showed legitimate victim and witness concerns.

Pursuant to section 3003, subdivision (f), a parolee cannot be placed within 35 miles of the actual residence of a victim or witness who objects to his placement. Thus, the Department's parole staff measured the distance from the victims' locations to Herzog's planned parole placement. The Department could not place Herzog back in San Joaquin County because his planned placement was within 35 miles of all of the legitimate victims and witnesses identified by the staff.

The Department sought alternative sites. The staff considered placing him with his sister in Elk Grove, but the city was within 35 miles of at least one of the victims. They considered Modoc County, but the county was too remote for parole staff and inaccessible to a global positioning system (GPS).

By then it was the first week of September. Parole staff investigated the possibility of placing Herzog in Lassen County. Several factors favored Lassen County. Most significantly, there were no victims or witnesses within 35 miles. Due to the proximity to High Desert State Prison and California Conservation Center, there was a formidable law enforcement presence that could track Herzog and apprehend him if necessary. Moreover, the county was more sparsely populated.

Nevertheless, the Department had to determine where Herzog would live and how he would be monitored. It carefully crafted conditions of his parole to address the safety of the people of Lassen County. On September 15 the

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Department issued a notice of release form to the Lassen County and Susanville law enforcement officials that provided Herzog's vital information and contact information, and invited local officials to submit written comments.

Local officials submitted 6,000 signatures from residents opposing Herzog's placement in Lassen County. On September 17 a Department administrator discussed the conditions of Herzog's parole with the Lassen County Sheriff and the sheriff-elect during a face-to-face meeting. The Susanville Police Department was also instructed on Herzog's parole conditions.

The conditions are as follows. Herzog lives in a trailer in a fenced-in compound on the grounds of High Desert State Prison. The Department pays for all of his living expenses, including food, heating, water, and electricity. He must be in his living quarters between 5:00 p.m. and 8:30 a.m., and between 1:30 p.m. and 3:30 p.m. Department staff must escort him anytime he is on prison grounds outside of his residential compound.

Herzog must notify High Desert's gatehouse operator anytime he is going to leave his residence and anytime a visitor is arriving or departing. A parole agent escorts him to any appointment outside prison grounds. Moreover, the Department monitors his movements on a GPS ankle bracelet. If he moves more than 150 feet from his trailer, the GPS monitor alerts his parole agent with a cell phone message.

The City of Susanville and Lassen County (petitioners) filed a petition for a writ of mandamus pursuant to section 1085 of the Code of Civil Procedure. The trial court ruled that Herzog's placement in Lassen County was not in the best interests of the public. The court granted the petition and ordered the Department to transfer Herzog out of Lassen County forthwith. The Department appeals.

## DISCUSSION

### I

A few basic principles guide our review. First, the Legislature has given the Department exclusive jurisdiction and full discretion to determine a parolee's placement. (§ 3003; *In re Roberts* (2005) 36 Cal.4th 575, 588 [31 Cal.Rptr.3d 458, 115 P.3d 1121]; *People v. Stevens* (2001) 89 Cal.App.4th 585, 588 [107 Cal.Rptr.2d 305].) Second, mandamus is a remedy available to correct ministerial error; it is not available to control an agency's discretion. (*Ridgecrest Charter School v. Sierra Sands Unified School Dist.* (2005) 130 Cal.App.4th 986, 1002 [30 Cal.Rptr.3d 648].) Thus, the courts will

interfere by mandamus only "when the action taken . . . is 'so palpably unreasonable and arbitrary as to indicate an abuse of discretion as a matter of law.' " (*Sanders v. City of Los Angeles* (1970) 3 Cal.3d 252, 261 [90 Cal.Rptr. 169, 475 P.2d 201], quoting *City and County of S. F. v. Boyd* (1943) 22 Cal.2d 685, 690 [140 P.2d 666].) Third, the parties agree that the facts are undisputed and the question presented is a question of law to be resolved de novo.

## II

Petitioners contend the Department abused its discretion both substantively and procedurally; that is, they assert that Herzog was "dumped" in their small, rural community without any evidentiary support and without any showing that other counties were not equally suitable, and they insist they were not given timely or sufficient notice of the "dumping." We turn to two specific Penal Code sections to resolve, first, the substantive charge and, second, the alleged procedural deficiencies.

■ Section 3003 gives the Department the discretion to determine a suitable parole placement. Although a parolee is to be placed in the county of his last residence if possible, the Department retains the discretion to return the parolee to another county, "if that would be in the best interests of the public." (§ 3003, subd. (b).) The statute requires the Department, however, to consider the following factors: "(1) The need to protect the life or safety of a victim, the parolee, a witness, or any other person. [¶] (2) Public concern that would reduce the chance that the inmate's parole would be successfully completed. [¶] (3) The verified existence of a work offer, or an educational or vocational training program. [¶] (4) The existence of family in another county with whom the inmate has maintained strong ties and whose support would increase the chance that the inmate's parole would be successfully completed. [¶] (5) The lack of necessary outpatient treatment programs for parolees receiving treatment pursuant to Section 2960." (§ 3003, subd. (b).)

As required by section 3003, the Department gave preference to Herzog's last place of residence, San Joaquin County. It received, however, an inordinately large number of objections from victims and witnesses. Because the Department was statutorily precluded from placing Herzog within 35 miles of any objecting victim or witness, it conducted an investigation into the veracity and location of each complainant. The Department abandoned the placement in San Joaquin County after determining that Herzog would have resided within the statutory 35-mile safety zone.

In the writ proceedings, the Department explained its rationale for selecting Lassen County, with particular attention to the statutory factors. The Department gave the greatest weight to the safety of the victims and the

community by finding a location distant from any of Herzog's victims and where he could be easily monitored by law enforcement.

The Department considered placing Herzog in the City of Elk Grove to be close to his sister. Again, the potential placement failed because his sister resided within 35 miles of at least one of Herzog's victims.

In order to provide the utmost security to the community, the Department selected a placement on the grounds of a state prison. Thus, not only is Herzog constantly monitored by the GPS signal on his ankle bracelet, he must constantly check in with the state prison guards, who are available to apprehend him quickly if necessary. Moreover, the Department set a rigid curfew schedule, thereby restricting his ability to travel off the prison grounds to a few hours in the morning and an hour and a half in the late afternoon. For appointments outside the prison grounds, he must be escorted.

To obtain this high level of supervision and security, the Department decided to subsidize Herzog's living expenses in the trailer on the state prison grounds. As a result, the Department explained that Herzog does not need a job and therefore the employment factor is immaterial.

Finally, Herzog has access to outpatient treatment in Lassen County, and he completed two outpatient treatment meetings between September 18 and October 26, 2010.

Petitioners urge us to apply the logic of *McCarthy v. Superior Court* (1987) 191 Cal.App.3d 1023 [236 Cal.Rptr. 833] (*McCarthy*) to sustain the trial court's order to remove Herzog from Lassen County forthwith. But *McCarthy* does not support the issuance of the writ of mandamus in this case. Indeed, neither the facts nor the law is apposite.

At the time *McCarthy* was decided, section 3003 mandated that a parolee be returned to the county that committed him to state prison, "absent a determination by the parole authority that the best interests of the public and parolee require[d] a different county of return." (*McCarthy, supra*, 191 Cal.App.3d at p. 1029.) Ignoring this statutory preference completely, the Department placed the notorious Lawrence Singleton not in or near San Diego County, where he had been tried and committed, but in Contra Costa County. The public was outraged. The trial court granted a temporary restraining order, removing Singleton from Contra Costa County. (*Id.* at pp. 1027–1028.) The Court of Appeal granted a petition for a writ of mandate but reversed the injunctive relief. (*Id.* at p. 1034.)

By failing to follow the statutory mandate to place a parolee in the county from which he was committed, the parole authority's abuse of discretion was

flagrant. The court wrote: "Plainly, the board's apparent intention to return Singleton to Contra Costa County in the first instance, would flout the explicit statutory mandate and constitute an abuse of discretion. '[C]ourts will interfere by mandamus when the action taken by the board is "so palpably unreasonable and arbitrary as to indicate an abuse of discretion as a matter of law." [Citations.]' (*Sanders v. City of Los Angeles* (1970) 3 Cal.3d 252, 261 [90 Cal.Rptr. 169, 475 P.2d 201].) Since it is unrefuted that the board never understood or considered that Singleton was required to be returned to San Diego County as 'the county from which he . . . was committed' (Pen. Code, § 3003, subd. (a)), its intended decision to return him to another county in the first instance is palpably erroneous. Whether the parole authority may in the exercise of its discretion return Singleton to a county other than the sentencing county turns upon strict compliance with the legislative mandate and specified criteria. Efforts to correct any perceived shortcomings in the existing statute regulating parole placement must be addressed to the Legislature and not the courts." (*McCarthy, supra*, 191 Cal.App.3d at p. 1031, fn. omitted.)

■ Nevertheless, the court explained that the trial court lacked jurisdiction to issue a temporary restraining order. "To allow a challenge by a complaint for injunctive relief, as sought below, would eviscerate the statutory mandate by directing the board to exercise its discretion in a particular manner. (See *People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 491 [96 Cal.Rptr. 553, 487 P.2d 1193] . . . .) [¶] Indeed, the unusual circumstances reflected herein pointedly illustrate the Legislature's wisdom in prohibiting injunctive relief against public officers' performance of official duties prescribed by a duly enacted statute. The problems attendant upon placement of parolees involve matters of statewide interest and concern. If local jurisdictions or agencies were indiscriminately permitted to obtain injunctive relief, either temporary or permanent, to prevent the return of undesirable parolees to their respective jurisdictions, then the legislative purpose underlying enactment of section 3003 would be seriously undermined." (*McCarthy, supra*, 191 Cal.App.3d at p. 1032, citations omitted.)

The Department argues that petitioners improperly obtained a writ of mandamus to control the Department's exercise of discretion and, as in *McCarthy*, frustrated the legislative intent to carefully and "equitably distribute parolees statewide, particularly in view of the broad discretion granted to the board under subdivision (b) to alter the legislative mandate where appropriate." (*McCarthy, supra*, 191 Cal.App.3d at p. 1030.) We agree. Mandamus was an appropriate remedy in *McCarthy*, unlike here, because the Department had utterly disregarded its statutory duty to place Singleton in the county from which he was committed, a patently egregious abuse of discretion. Here, by contrast, the Department attempted to subscribe to the newer statutory mandate to place a parolee in his last county of residence. It was

only after the Department determined that his prospective placement in San Joaquin County would locate Herzog within 35 miles of victims and witnesses that it exercised its discretion to find a more suitable placement for the protection of victims, witnesses, and the community.

On the record before us, we can find no abuse of discretion. Not only did the Department adhere to the requisite statutory mandates, it handpicked a living situation for Herzog to maximize security and thereby to minimize the risk to the local population. Thus, Herzog's every move is monitored, he is restricted to the grounds of a state prison for at least 17 1/2 hours a day, he is escorted off prison grounds for any appointment, and he must notify prison guards anytime he leaves or a visitor arrives.

Petitioners speculate that other communities can offer equivalent security and greater job opportunities. They deplore the living subsidy Herzog receives, insisting that by subsidizing his expenses the Department was able to minimize the importance of the fact that job opportunities are limited in Lassen County. The taxpayer, petitioners argue, would be better served if Herzog were to be placed in a community where he can work and support himself.

██ It may or may not be true that other communities can offer equivalent or superior opportunities to Herzog. The wisdom of the Department's placement, however, is not the question before us. Undoubtedly, counties throughout the state would object to the placement of a parolee in their jurisdictions. But the Department has the unwelcome task of choosing one of those communities, and absent an abuse of discretion, the Department's decision must stand. Because the Department first attempted to place Herzog in the county where he last resided, then considered alternatives including the county where his sister resides, and finally found a secure placement with minimal risk of harm to the public, we conclude the Department did not abuse its discretion in choosing Lassen County and placing Herzog on the grounds of High Desert State Prison.

### III

Petitioners complain even more vociferously about procedural irregularities. They contend they were not given sufficient notice and were not provided written reasons justifying placement of Herzog in Lassen County. We begin with the timing of the notice.

Section 3058.6, former subdivision (b)(3) provided: "When notification cannot be provided within the 45 days . . . due to a modification of the department's decision regarding the community into which the person is

scheduled to be released pursuant to paragraph (4) [of subdivision (b)], the department shall provide notification as soon as practicable, but in no case less than 24 hours after the final decision is made regarding where the parolee will be released."

Petitioners argue that the Department did not comply with former section 3058.6's 24-hour notice provision. They received notice on September 15, a mere three days before Herzog arrived. They argue that the Department made the decision earlier in September but failed to give them notice within 24 hours of making the decision. They misread the statute.

■ We, of course, must construe the statute according to the plain meaning of the words used by the Legislature. ■ The Legislature did not say, as petitioners suggest, that the Department must give notice in no "more" than 24 hours after the final decision is made. Rather, the statute required the Department to give notice in "no case less than 24 hours after the final decision is made regarding where the parolee will be released." (§ 3058.6, former subd. (b)(3).)

To a degree, common sense supports petitioners' reading of the statute. The statute allows the Department to give notice as soon as "practicable" when it is forced to reconsider its placement. It would make sense for the 24-hour notification to limit the flexible notion of "as soon as practicable" by requiring the Department to notify recipient counties no "more" than 24 hours after the decision is made. In this way, the recipient county would be notified shortly after the decision is made and the county would have as much time as possible to challenge the decision.

■ We are not at liberty, however, to rewrite a statute to comport with our notion of wisdom or common sense. The fact remains that the statute stated the Department cannot give notice "less" than 24 hours after the decision to locate a parolee is made rather than, as petitioners contend, "more" than 24 hours. Perhaps the Legislature wanted to assure that the Department's decision was final before it was communicated to the county that would receive a parolee. If, on the other hand, there is an error, we must leave it to the Legislature to correct it.

In any event, the purpose of the notice is to provide a community with the opportunity to register its opposition to a pending placement. The brevity of the notice certainly did not dampen the voice of dissent. Over 6,000 community members objected in writing to Herzog's placement in Lassen County. Apparently, word spread before the Department officially notified county officials, since at least two of the complaints were dated September 12, 2010, a full three days before the Department notified Lassen County and

the City of Susanville. Consequently, the Department complied not only with the letter of the law, but with the spirit as well, and the community was provided sufficient opportunity to express its dissatisfaction with Herzog's placement.

Finally, petitioners urge us to affirm the issuance of the writ removing Herzog forthwith because the Department did not provide them with a written statement of reasons as required by section 3003, subdivision (b). Subdivision (b) states: ". . . If the Board of Parole Hearings . . . or the Department of Corrections and Rehabilitation . . . decides on a return to another county, it shall place its reasons in writing in the parolee's permanent record and include these reasons in the notice to the sheriff or chief of police pursuant to Section 3058.6." There is no dispute that the Department failed to set forth the reasons in the notice it provided pursuant to section 3058.6. The question is whether the oversight justifies the issuance of the writ ordering Herzog to be removed from Lassen County forthwith. We conclude the failure to include the written reasons in the notice does not constitute a patent abuse of discretion justifying the radical remedy sought by petitioners.

Let us be clear. The Department should have, and did not, provide the reasons for Herzog's placement in its notice pursuant to section 3058.6. A community should have the benefit of the Department's justification for placing a parolee within its boundaries. We do not condone the failure to subscribe to a clear statutory duty.

Yet, as the Department points out, parole officials met with representatives of county and city law enforcement before Herzog was released and explained the reasons for his placement in Lassen County. Moreover, during the writ proceedings, the Department explained its rationale at some length in the materials submitted in opposition to issuance of the writ. As a result, the purpose of the statute has not been thwarted; indeed, the purpose has been fulfilled, albeit a few days late.

On this record, we cannot say that the failure to set forth the reasons in the notice constituted the kind of arbitrary and capricious action considered an abuse of discretion. Moreover, no purpose would be served by ordering the Department to repeat the reasons it has already provided orally and in the writ proceedings. Petitioners do not allege, and there is no evidence to suggest, that they did not know or understand why Lassen County was chosen as a placement for Herzog. Nor do they allege that the oversight compromised their ability to contest the placement. We therefore conclude that the Department's failure to provide reasons does not render its action in this matter an abuse of discretion, nor does it compel us to affirm the writ ordering Herzog's removal from Lassen County forthwith.

## DISPOSITION

The judgment is reversed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

Nicholson, J., and Hoch, J., concurred.