Filed 6/24/15

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| DEPARTMENT OF CORRECTIONS AND REHABILITATION,<br><br>      Petitioner,<br><br>  v.<br><br>THE SUPERIOR COURT OF SUTTER COUNTY,<br><br>      Respondent;<br><br>DEMOND CHARLES BRACKETT et al.,<br><br>      Real Parties in Interest. | C076785<br><br>(Super. Ct. No. CRPR140000183) |

ORIGINAL PROCEEDING in mandate. Peremptory writ of mandate issued. Susan E. Green, Judge.

Kamala D. Harris, Attorney General, Jennifer A. Neill, Assistant Attorney General, Phillip J. Lindsay, and Andrew R. Woodrow, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Diane Nichols, under appointment by the Court of Appeal, for Real Party in Interest Demond Charles Brackett.

No appearance for Real Party in Interest the People.

1

The Attorney General seeks a writ of mandate compelling the superior court to vacate its order permitting a parolee to change his place of residence. The facts in this case suggest there has been no abuse of discretion or miscarriage of justice to merit writ relief. No one at the parole revocation hearing, including the district attorney and the parole agent, objected to the parolee's request to reside in Butte, rather than Sutter, County. A written report suggested an array of services available to the parolee in Butte County, whereas the parole agent provided but one possible service available in Sutter County. While paroled for convictions of theft of a vehicle and failure to appear in Sutter County, defendant Demond Charles Brackett was supervised from yet another county, Placer, and compelled to take two buses and a train to get to the parole office. The trial court revoked his parole, and pursuant to section 3000.08 of the Penal Code, amended as a part of the Public Safety Realignment Act (Realignment Act), changed the conditions of his parole, including his county of residency.[1] (Stats. 2011, ch. 15 (Assem. Bill No. 109).) The court expressly stated it was not changing his parole placement.

The Attorney General thereafter intervened on behalf of the Department of Corrections and Rehabilitation (Department) and moved to vacate the condition that allowed defendant to reside in Butte County. The district attorney opposed the motion. The Attorney General argued, as she does on appeal, that by enacting the Realignment Act the Legislature did not intend to give superior courts the authority to transfer violent parolees to other counties without regard for the advance notice requirements of section 3058.6 or to abandon the comprehensive statutory scheme governing parolee placement (§ 3003).

Mindful of the legal adage that bad facts are often the harbinger of bad law, we are careful in our review of the facts in this case to not lose sight of the controlling legal

---

[1] All further statutory references are to the Penal Code unless otherwise designated.

principles. Thus, the sole issue before us is one of statutory construction, a task blind to the compelling and unopposed facts presented to the trial court. As a matter of law and despite the many good reasons justifying the trial court's order, we must agree with the Attorney General and issue a writ of mandate compelling the trial court to vacate its order granting defendant's motion to reside in Butte County.

## FACTS

Defendant served a two-year prison term and was released on parole to Sutter County. Thereafter, in violation of his parole conditions, defendant cut off his global positioning system (GPS) monitor and possessed pepper spray. The Sutter County District Attorney brought parole revocation proceedings, and during the proceedings defendant moved to modify his parole conditions so that he could reside in Butte County. The district attorney supported the motion, pointing out that defendant's last legal residence was Butte County, that treatment and rehabilitation programs are available in Butte County, and that the plan was to place him in Butte County, but "for some reason," he was placed in Sutter County instead. The district attorney continued, "Additionally, pursuant to parole policy which I received a copy from Parole, specifically Penal Code Section 3003(a) it indicate[s] that factors to consider in placement are educational and vocational programs and the existence of treatment programs all of which are in Chico in Butte County. Additionally there is a Chico GPS unit that can monitor Mr. Brackett so there is not an issue regarding safety of the community. I think given all these factors, modifying his parole to allow him to reside in Butte County it's in the best interests of not only Mr. Brackett to rehabilitate but also in the best interests of the public."

The court asked defendant's parole agent a number of questions. The agent did not oppose defendant's motion to reside in Butte County, but he explained that defendant had not followed the proper process. He acknowledged that defendant was a transient in Sutter County and had great difficulty in commuting the tremendous distance to report to the parole office in Auburn. "He'll take the Yuba-Sutter Transit to Sacramento

3

downtown.  From Sacramento downtown he'll take the RT Rail to Watt Avenue.  From Watt Avenue the Placer County bus station [*sic*] from Placer County goes there and takes people back to Auburn and drops them off near the parole office."

As for the services available in Sutter County, the agent was only able to name one—One Stop for jobs.  The court asked, "But where is he supposed to stay?"  The agent replied, "Transient."

In Butte County, however, the reentry case plan identified Oroville Rescue Mission in Oroville as a homeless shelter where defendant could reside.  The parole agent, relying on hearsay months earlier from another agent about another offender, reported that the Oroville Rescue Mission did not want to take in more sex offenders.  Nevertheless, defendant had stayed at the mission within the last three months and stated that the staff did not have any objection to having him there and told him to plug in his ankle monitor.

Following a personal interview with defendant, the Department prepared a "COMPAS Reentry Summary" delineating a case plan for defendant.  The case plan identifies the following services available in Butte County in addition to the residency placement:  help finding a job at the Department of Rehabilitation in Chico, enrollment in a drug and alcohol treatment program at The Salvation Army in Chico, spending time with a positive role model at the Iversen Center in Chico, and obtaining a driver's license and Social Security card at the Department of Motor Vehicles and Social Security Administration offices in Chico.

Defendant's last legal residence was in dispute.  As mentioned, the reentry case plan identified Butte County.  The court asked counsel to explain how Sutter County had been labeled as his last legal residence.  Defense counsel explained that defendant's mother had lived in Sutter County, but in fact she was deceased.  He also pointed out that "Butte County Superior Court lists several contacts prior to him going to prison out of

4

this county of criminal violations that he has in Butte County." Defendant, a transient, was in Sutter County when he was committed.

The court made clear it did not intend to transfer parole supervision to another county, but merely to authorize defendant to reside in Butte County. The court recognized the potential for abuse and admonished defendant: "Mr. Brackett, it's important for me to kind of question this because we don't want to start a situation where we have all kind of parolees coming in and wanting to move residences; but based on what I heard, there seems to be a specific need in this case to provide this." The court accepted the agreement entered into by the district attorney and defense counsel. The court modified defendant's conditions of parole to allow him to reside in Butte County.

Following entry of the court's order, the Department intervened and moved to vacate the order. Defense counsel argued the factual scenario of this case is "particularly unique" because the court was "only allowing him to reside and be present in this county. The Court is not saying he has to report to a different parole office. And with the GPS he is being supervised 24 hours a day. But I think it's unique that the Court was allowing him -- giving him the opportunity to reside in this homeless shelter primarily because there isn't much in Sutter County for him. And you hate to set him up just to fail by putting him out on the streets. I do think it's specific in this case because of the residency issue."

The prosecutor concurred. "The Court mentioned that this is a unique situation. I think that's true. I acknowledge the A.G.'s position that this may open floodgates, but this was a very unique circumstance where we had issues with Mr. Brackett even reporting to Auburn. He didn't know where Auburn was. He's transient and, according to his parole packet, seems like all intents and purposes he was going to be placed in Butte. It's cited in my motion that its Compass Re-Entry (phonetic) Summary they were telling him he was going to Butte. It says 'COR Butte.' They set up all these programs for him in Butte and then he's paroled to Sutter and told to go to One Stop.

5

"So I think this is a very unique situation where the Court not only did what they had the authority to do, but did what was right, and I don't think that's going to open the floodgates because courts are always required to assess situations and come up with the right outcome. They should be given that discretion and they are given that discretion under AB-109 [the Realignment Act]."

The court agreed and denied the motion to vacate the order modifying the terms of parole. The Department seeks a writ of mandate ordering the trial court to vacate its order permitting defendant to reside in Butte County. The case presents an issue of first impression arising after passage of the Realignment Act. Although defendant has been incarcerated again for a two-year term, both sides agree we should reach the merits of the dispute because the issue will recur when defendant is released and, in all probability, will be raised in cases involving other parolees. We agree. " '[W]hen a pending case involves a question of broad public interest which is likely to recur between the same parties or others, "the court may exercise an inherent discretion to resolve that issue even though an event occurring during its pendency would normally render the matter moot." [Citations.]' " (*City of Susanville v. Department of Corrections & Rehabilitation* (2012) 204 Cal.App.4th 377, 380 (*City of Susanville*).)

## DISCUSSION

In 2011 the Legislature concluded that "the dramatic increase in corrections spending over the past two decades" had not reduced recidivism and that "California must reinvest its criminal justice resources to support community-based corrections programs and evidence-based practices that will achieve improved public safety returns on this state's substantial investment in its criminal justice system." (§ 17.5, subd. (a)(1), (2), (3), (4).) The Legislature responded with the Realignment Act, which "shifted responsibility for housing and supervising certain felons from the state to the individual counties" (*People v. Cruz* (2012) 207 Cal.App.4th 664, 671) and "launched a dramatic and unexpected sea change in felony sentencing for which many criminal justice partners

6

were not fully prepared when the new law became operative in October 2011" (*People v. Clytus* (2012) 209 Cal.App.4th 1001, 1007, overruled on other grounds in *People v. Scott* (2014) 58 Cal.4th 1415, 1426).  Some of these partners "have encountered uncertainty in interpreting some of its terms." (*Id*. at p. 1005.)  We hope to provide clarity in construing sections 3003, which predated the Realignment Act, and 3000.08, which was amended by it.

**Statutory Placement of Parolees Before the Realignment Act**

No one disputes that before passage of the Realignment Act, the Department had "exclusive jurisdiction and full discretion to determine a parolee's placement" pursuant to section 3003.  (*City of Susanville*, *supra*, 204 Cal.App.4th at p. 382.)  "Section 3003 gives the Department the discretion to determine a suitable parole placement.  Although a parolee is to be placed in the county of his last residence if possible, the Department retains the discretion to return the parolee to another county, 'if that would be in the best interests of the public.' (§ 3003, subd. (b).)  The statute requires the Department, however, to consider the following factors:  '(1) The need to protect the life or safety of a victim, the parolee, a witness, or any other person.  [¶]  (2) Public concern that would reduce the chance that the inmate's parole would be successfully completed.  [¶]  (3) The verified existence of a work offer, or an educational or vocational training program.  [¶] (4) The existence of family in another county with whom the inmate has maintained strong ties and whose support would increase the chance that the inmate's parole would be successfully completed.  [¶]  (5) The lack of necessary outpatient treatment programs for parolees receiving treatment pursuant to Section 2960.' (§ 3003, subd. (b).)" (*City of Susanville*, at p. 383.)

Before placing a person paroled on a sentence for a violent felony offense, as defined in section 667.5, subdivision (c), in a county other than his last legal residence, section 3058.6 requires the Department to give the receiving county advance notice and an opportunity to object to the placement.  The Department is required to consider any

7

comments it receives regarding the parolee's county of placement and must "respond in writing not less than 15 days prior to the scheduled release with a final determination as to whether to adjust the parole location . . . ."  (§ 3058.6, subd. (b)(4).)

Taken together, sections 3003 and 3058.6 vest the Department with the authority to place parolees in the county of their last legal residence or, in its discretion, to choose an alternative county if the circumstances satisfy the statutory factors and the Department provides the requisite notice and responds to the comments it receives.  The question is whether the Realignment Act allows the superior court to share the authority otherwise exclusively vested in the Department.  To answer this question, we must examine section 3000.08, the pertinent section amended by the Realignment Act.

**Enter the Realignment Act**

Preliminarily, we note that one of the major changes produced by the Realignment Act is the enhanced role of the superior court.  Before the Realignment Act the Department, not the courts, had the power to set parole conditions.  (*In re Prather* (2010) 50 Cal.4th 238, 253-255.)  Before the Realignment Act the Board of Parole Hearings, not the courts, had the power to conduct parole revocation hearings.  The Realignment Act, however, charges the superior court with the duty to conduct revocation hearings, and if it finds the parolee has violated parole, the court has the authority to (1) return the person to parole supervision with modification of conditions, if appropriate, including a period of incarceration in county jail; (2) revoke parole and order the person to confinement in the county jail; or (3) refer the person to a reentry court pursuant to section 3015 or other evidence-based program in the court's discretion.  (§ 3000.08, subd. (f).)

In sum, after the Realignment Act, the Department is vested with the authority to place a parolee in the appropriate county and the superior court is vested with the authority to modify the conditions of parole if it finds the parolee has violated the terms of his or her parole.  Within this statutory scheme, does the court have the authority to change the county in which the parolee resides?

8

Defendant points out that the court was careful not to overstep its authority. The court expressly stated it was not changing defendant's placement but only modifying the condition of his parole by allowing him to reside in a different county. In other words, although defendant would be living in Butte County, he could be supervised from Sutter or Placer County.

Truly, the court made clear its efforts to avoid transgressing section 3003. On more than one occasion, the court emphasized that it did not intend to interfere with the parole authority's supervision of defendant by transferring his county of parole supervision; instead, it intended only to modify his conditions of parole so that he could reside in Butte County. But in the Attorney General's view, permitting a parolee to live in a different county changes his county of parole supervision and has other practical consequences. For example, to ensure effective supervision, a different parole unit would supervise defendant's parole if he is permitted to reside in Butte County.

Whatever the practical ramifications of allowing a parolee to live in one county while being supervised by the parole authorities in another county, we conclude the flaw in the court's reasoning is more fundamental and undermines the basic purpose of section 3003. That purpose is exposed in *City of Susanville*, *supra*, 204 Cal.App.4th 377. Although the facts bear no resemblance to the case at hand, *City of Susanville* provides a vivid illustration of the political hot potato a parolee can pose to local officials and supports the wisdom of vesting in the Department the authority to find a suitable placement for inmates who have served their terms.

In *City of Susanville*, we wrote: "After Loren Herzog completed his sentence for voluntary manslaughter and accessory to three murders, California's Department of Corrections and Rehabilitation (Department) was faced with the onerous and thankless task of finding a suitable parole placement for him, made all the more difficult by statutory restrictions on where he could live and by public outcry against placement anywhere. Ultimately, the Department provided Herzog a trailer located within a fenced-

9

in compound on the grounds of High Desert State Prison and imposed severe restrictions on his movement. The City of Susanville and the County of Lassen filed a petition for a writ of mandamus to remove Herzog. The trial court ruled that his placement in Lassen County was not in the best interests of the public and ordered the Department to transfer Herzog out of Lassen County forthwith." (*City of Susanville*, *supra*, 204 Cal.App.4th at p. 380.) Although Herzog had died by the time we decided the case, we confronted the important and recurring issues the case presented because "[t]he statutory restrictions imposed upon the placement of parolees, along with the public outcry that inevitably attends the placement of high profile parolees, assure that the issues will arise again." (*Ibid*.)

Simply put, few counties, if any, welcome parolees, particularly parolees such as defendant who are registered sex offenders. Section 3003 provides clear criteria mandating which county must allow a parolee to reside within its borders while at the same time providing a mechanism for the Department to find an alternative residence when identifiable factors are satisfied. Thus, section 3003 delegates to the Department the unwelcome task of placing a parolee, applying neutral factors. At the same time, for people paroled on sentences for violent felony offenses, section 3058.6 requires the Department to give advance notice to the receiving county and the opportunity to object to the placement. For as *City of Susanville* dramatically demonstrates, public concern can persuade local officials, including the superior court, to resist placement of a serious or violent felon and shift the burden elsewhere. By enacting section 3003, the Legislature expressly chose the Department, rather than the county or the superior court, to determine the appropriate placement.

Whatever public concerns motivated the county and court in *City of Susanville* are certainly not evident here. We do not suggest that defendant is a high profile, violent felon like Herzog. Indeed, we realize he had not served a prison term for the commission of a violent felony at the time he was paroled. The record reflects no public outcry; in

10

fact, all the parties at the hearing concurred that Butte County offered services to defendant that Sutter County did not. And, in deference to section 3003, the court expressly did not change defendant's parole placement, only his residency. The court, in a reasoned decision, believed that changing the place of residency alone did not violate the statutory scheme because it was authorized via section 3000.08 to modify defendant's conditions of parole. In the trial court's view, place of residency constitutes a condition of parole.

As we made clear at the outset of this opinion, the issue before us is an issue of law, not fact. The facts support the trial court's decision, and if the standard of review had been to search for substantial evidence, we would not grant the petition. But because our task is to construe the meaning of section 3000.08 within the entire statutory framework, including section 3003, we must conclude as a matter of law that the trial court erred.

What animates a fearful populace is not which county supervises a parolee, but where he is physically present. Section 3003 provides a careful construct dictating where a parolee should be placed, and the implementation of that process is intentionally delegated to the Department. We agree with the Attorney General that there is nothing in the general language of the Realignment Act that evidences a legislative intent to unravel the delegation of that specific authority to the Department. Thus, we are guided by two venerable principles of statutory construction. "[E]very statute should be construed with reference to the whole system of law of which it is a part, so that all may be harmonized and have effect." (*Moore v. Panish* (1982) 32 Cal.3d 535, 541.) And a " 'more specific statute controls over a more general one [citations].' " (*Soco West, Inc. v. California Environmental Protection Agency* (2013) 213 Cal.App.4th 1511, 1518.)

There is no question the Realignment Act places additional responsibility on the superior court with respect to parole revocation hearings. In construing the general provision, section 3000.08, authorizing the superior court to modify a parole condition

11

within the whole system of law governing how and where parolees should reside, the specific criteria set forth in section 3003 must prevail. This construction provides harmony within the entire statutory scheme, preserving the Department's "exclusive jurisdiction and full discretion to determine a parolee's placement." (*City of Susanville*, *supra*, 204 Cal.App.4th at p. 382.)

## DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to vacate its order modifying defendant's parole to allow him to reside in Butte County.


                                          RAYE                , P. J.



We concur:



          MURRAY        , J.



          HOCH          , J.


12