Filed 7/20/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br>　　　　Plaintiff,<br>v.<br>WESLEY WILSON,<br>　　　　Defendant and Respondent;<br>DEPARTMENT OF CORRECTIONS<br>AND REHABILITATION,<br>　　　　Real Party in Interest and<br>　　　　Appellant. | A160394<br><br>(Alameda County<br>Super. Ct. No. 19-CR-018576) |

Defendant and respondent Wesley Wilson (Defendant) invited the trial court to exercise its authority under Penal Code section 1203.2[1] to modify a residency restriction imposed as a condition of his parole.  The trial court accepted that invitation.  Real party in interest Department of Corrections and Rehabilitation (CDCR) appeals, arguing the trial court exceeded its authority under the statute because, at the time of the modification, there was no pending parole revocation proceeding or alleged parole violation.  We agree and reverse the challenged order.

---

[1] All undesignated  statutory references are to the Penal Code.

1

## BACKGROUND

In 2009, Defendant was convicted of two counts of lewd and lascivious acts with a child under age 14 using force or violence (§ 288, subd. (b)(1)) and one count of sexual battery (§ 243.4, subd. (a)).  After serving a state prison term, Defendant was released to parole in 2018.  CDCR determined that Defendant was a "high risk" sex offender and imposed the following residency restriction as a condition of his parole:  "You shall not reside within one-half mile of any public or private school (kindergarten and grades 1 through 12, inclusive) pursuant to [s]ection 3003(g)."[2]

In 2019, Defendant filed a motion for relief under section 1203.2, subdivision (b)(1) (section 1203.2(b)(1)), inviting the trial court to "act on its [own] motion and modify the conditions of his parole to exclude the residence restrictions."[3]  Defendant argued he was currently homeless because he was unable to reside in any home available to him, this result was harmful and contrary to the purposes of parole, and the residency restriction was therefore invalid as applied to him.  CDCR opposed the motion, arguing the trial court was not authorized to modify Defendant's parole conditions under section 1203.2(b)(1) absent a pending parole violation and, in the alternative, Defendant's challenge to the residency restriction was meritless.  On March

---

[2] Section 3003, subdivision (g) provides:  "Notwithstanding any other law, an inmate who is released on parole for a violation of Section 288 or 288.5 whom the Department of Corrections and Rehabilitation determines poses a high risk to the public shall not be placed or reside, for the duration of the inmate's parole, within one-half mile of a public or private school including any or all of kindergarten and grades 1 to 12, inclusive."

[3] Defendant's motion erroneously stated he was subject to a residency restriction under section 3003.5, subdivision (b).  CDCR clarified for the trial court the residency restriction in Defendant's parole conditions.

6, 2020, the trial court issued an order modifying the residency restriction. CDCR appealed.

## DISCUSSION

The first question before us is whether section 1203.2(b)(1) authorized the trial court to modify Defendant's parole conditions in the absence of a pending parole revocation hearing or alleged parole violation. We review this statutory interpretation question de novo. (*Manriquez v. Gourley* (2003) 105 Cal.App.4th 1227, 1233.) "Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.)

Section 1203.2(b)(1) provides, in its entirety: "Upon its own motion or upon the petition of the supervised person, the probation or parole officer, or the district attorney, the court may modify, revoke, or terminate supervision of the person pursuant to this subdivision, except that the court shall not terminate parole pursuant to this section. The court in the county in which the person is supervised has jurisdiction to hear the motion or petition, or for those on parole, either the court in the county of supervision or the court in the county in which the alleged violation of supervision occurred. A person

3

supervised on parole or postrelease community supervision pursuant to Section 3455 may not petition the court pursuant to this section for early release from supervision, and a petition under this section shall not be filed solely for the purpose of modifying parole. This section does not prohibit the court in the county in which the person is supervised or in which the alleged violation of supervision occurred from modifying a person's parole when acting on the court's own motion or a petition to revoke parole. The court shall give notice of its motion, and the probation or parole officer or the district attorney shall give notice of their petition to the supervised person, the supervised person's attorney of record, and the district attorney or the probation or parole officer, as the case may be. The supervised person shall give notice of their petition to the probation or parole officer and notice of any motion or petition shall be given to the district attorney in all cases. The court shall refer its motion or the petition to the probation or parole officer. After the receipt of a written report from the probation or parole officer, the court shall read and consider the report and either its motion or the petition and may modify, revoke, or terminate the supervision of the supervised person upon the grounds set forth in subdivision (a) if the interests of justice so require."

We begin with the statutory language. The statute provides: "[u]pon its own motion . . . , the court may modify . . . supervision," with the only stated exception being a prohibition on terminating parole. (§ 1203.2(b)(1).) This appears to supply the requisite authority. Indeed, although the statute prohibits filing a petition "solely for the purpose of modifying parole," it expressly clarifies that it "does *not* prohibit the court . . . from modifying

4

a person's parole when acting on the court's own motion . . . ." (§ 1203.2(b)(1), italics added.) As Defendant argues, the statute thus appears to authorize the court's order.

However, as CDCR points out, indications to the contrary also appear in the statutory language. The statute provides the court "may modify, revoke, or terminate the supervision of the supervised person *upon the grounds set forth in subdivision (a)* if the interests of justice so require." (Italics added.) Subdivision (a) governs procedures upon the rearrest of or issuance of a warrant for a supervised person, and provides the court "may revoke and terminate the supervision of the person if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that *the person has violated any of the conditions of their supervision, has become abandoned to improper associates or a vicious life, or has subsequently committed other offenses*, regardless of whether the person has been prosecuted for those offenses." (Italics added.)[4] As CDCR argues, section 1203.2(b)(1), by

---

[4] Section 1203.2, subdivision (a) provides, in its entirety: "At any time during the period of supervision of a person (1) released on probation under the care of a probation officer pursuant to this chapter, (2) released on conditional sentence or summary probation not under the care of a probation officer, (3) placed on mandatory supervision pursuant to subparagraph (B) of paragraph (5) of subdivision (h) of Section 1170, (4) subject to revocation of postrelease community supervision pursuant to Section 3455, or (5) subject to revocation of parole supervision pursuant to Section 3000.08, if any probation officer, parole officer, or peace officer has probable cause to believe that the supervised person is violating any term or condition of the person's supervision, the officer may, without warrant or other process and at any time until the final disposition of the case, rearrest the supervised person and bring them before the court or the court may, in its discretion, issue a warrant for their rearrest. Notwithstanding Section 3056, and unless the supervised person is otherwise serving a period of flash incarceration,

incorporating the reasons set forth in subdivision (a), appears to limit the court's authority to modify supervision to instances where the supervised person has violated a parole condition or committed other wrongdoing.

CDCR also points to other statutory language. Jurisdiction over parolees is vested in "either the court in the county of supervision or the court in the county in which *the alleged violation of supervision* occurred." (§ 1203.2(b)(1), italics added.) " 'Court' " is defined as "a judge, magistrate, or *revocation hearing officer* described in Section 71622.5 of the Government Code." (§ 1203.2, subd. (f)(1), italics added.)[5] Although this language indicates the Legislature contemplated that many or most proceedings pursuant to this statute would be revocation proceedings, the language does

---

whenever a supervised person who is subject to this section is arrested, with or without a warrant or the filing of a petition for revocation as described in subdivision (b), the court may order the release of a supervised person from custody under any terms and conditions the court deems appropriate. Upon rearrest, or upon the issuance of a warrant for rearrest, the court may revoke and terminate the supervision of the person if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of their supervision, has become abandoned to improper associates or a vicious life, or has subsequently committed other offenses, regardless of whether the person has been prosecuted for those offenses. However, the court shall not terminate parole pursuant to this section. Supervision shall not be revoked solely for failure of a person to make restitution, or to pay fines, fees, or assessments, imposed as a condition of supervision unless the court determines that the defendant has willfully failed to pay and has the ability to pay. Restitution shall be consistent with a person's ability to pay. The revocation, summary or otherwise, shall serve to toll the running of the period of supervision."

[5] Government Code section 71622.5 authorizes superior courts to appoint hearing officers "to conduct parole revocation hearings . . . and to perform related duties as authorized by the court." (Gov. Code, § 71622.5, subd. (b).)

not conclusively limit the statute's application to such proceedings. Similarly, CDCR notes the definition of " 'Supervised person' " includes a person "subject to revocation of parole pursuant to Section 3000.08," a statute setting forth parole revocation procedures (and which we discuss in greater detail below). (§ 1203.2, subd. (f)(3)(E).) This definition seems to mean a person *currently* subject to revocation of parole in a pending proceeding, as CDCR suggests, but it could reasonably be construed to mean a person who is on parole and therefore, unlike a person not on parole, is subject to revocation if a violation is committed.[6]

We conclude the statutory language is ambiguous, and turn to the legislative history to help us discern the Legislature's intent. Section 1203.2 was originally adopted in 1935 and governed procedures regarding rearrest of probationers and revocation proceedings. (Stats. 1935, ch. 604, § 3, p. 1709.) Subdivision (b), including much of the language present today, was added in 1970. (Stats. 1970, ch. 333, § 1, pp. 729–730.) The bill as originally introduced authorized only the district attorney to petition for modification or revocation. (Assem. Bill No. 998 (1970 Reg. Sess.) as introduced Mar. 4, 1970.) A committee report stated the bill was proposed by a district attorney's office "to increase the adequacy of probation supervision by keeping law enforcement informed (e.g., who is on probation; what the conditions of probation are) and by allowing the D.A. to go directly to the court on the basis of new information developed." (Assem. Com. on Crim. Proc., Dig. of Assem. Bill No. 998 (1970 Reg. Sess.) as introduced Mar. 4,

---

[6] We note another ambiguous phrase: the court is granted the authority to modify parole "when acting on the court's own motion or a petition to revoke parole." While this could mean the court may modify parole on its own motion and without limitation, it may also be construed to mean the court is authorized to modify parole when acting on the court's own motion to revoke parole.

7

1970, pp. 1–2.)  The final version of the bill extended the right to petition to the district attorney and the probationer, and also authorized the trial court to act on its own motion.[7]  (Stats. 1970, ch. 333, § 1, pp. 729–730.)  The legislative history does not indicate the reason for the amendment.

Parole was added to section 1203.2 following realignment.[8]  "Prior to the advent of Realignment, virtually all authority over parole and parolees—including whether a period of parole was to be required; if so, its duration and conditions; and the power to revoke parole—resided in the paroling authority, either the Department of Corrections and Rehabilitation (CDCR) or the Board of Parole Hearings (formerly known as the Board of Prison Terms).  [Citations.]  With Realignment came an enhanced role for superior courts."  (*People v. VonWahlde* (2016) 3 Cal.App.5th 1187, 1196; see also Couzens et al., Sentencing Cal. Crimes (The Rutter Group 2021) ¶ 11:77 ["Prior to the enactment of the realignment legislation, once a defendant was sentenced to state prison, with only limited exceptions, the trial court

---

[7] As enacted in 1970, subdivision (b) provided: "Upon its own motion or upon the petition of the probationer or the district attorney of the county in which the probationer is supervised, the court may modify, revoke, or terminate the probation of the probationer pursuant to this subdivision.  The court shall give notice of its motion, and the district attorney shall give notice of his petition to the probationer and the probation officer; and the probationer shall give notice of his petition to the probation officer.  The court shall refer its motion or the petition to the probation officer.  After the receipt of a written report from the probation officer, the court shall read and consider the report and either its motion or the petition and may modify, revoke, or terminate the probation of the probationer upon the grounds set forth in subdivision (a) if the interests of justice so require."

[8] " '[T]he 2011 Criminal Justice Realignment Act (Stats. 2011, 1st Ex. Sess. 2011–2012, ch. 12, § 1) [the Realignment Act or "realignment"] . . . "changed the paradigm for the incarceration and postconviction supervision of persons convicted of certain felony offenses." ' "  (*People v. Johnson* (2020) 45 Cal.App.5th 379, 392 (*Johnson*).)

8

generally lost jurisdiction over the defendant.  [Citation.]  When the defendant was released on parole after service of the sentence, he was under the exclusive jurisdiction of CDCR and its administrative parole procedures.”].)  We explore this legislative shift in depth.

The first relevant enactment added section 3000.08, governing the supervision of parolees.  (Stats. 2011, ch. 39, §§ 37–38.)[9]  Two versions of the statute were enacted, the first providing that, through July 1, 2013, parolees are “subject to the jurisdiction of and parole supervision by” CDCR.  (Stats. 2011, ch. 39, § 37.)  The second version, operative on July 1, 2013, provided parolees are subject to “parole supervision by” CDCR and “the jurisdiction of the court in the county where the parolee is released or resides *for the purpose of hearing petitions to revoke parole and impose a term of custody . . . .*”  (Stats. 2011, ch. 39, § 38, italics added.)  The legislative counsel’s digest states: “The bill would provide, as of July 1, 2013, the court in the county in which the parolee resides or commits a violation of the terms and conditions of parole *shall have the limited jurisdiction to hear petitions to revoke parole and impose a term of custody.*”  (Legis. Counsel’s Dig., Assem. Bill No. 117 (2011–2012 Reg. Sess.), italics added.)

In 2012, section 1203.2 was amended to add mandatory supervision, postrelease community supervision, and parole.  (Stats. 2012, ch. 43, § 30.)  The bill includes the following uncodified statement of intent: “It is the intent of the Legislature in enacting this act to provide for a *uniform supervision revocation process* for petitions to revoke probation, mandatory supervision, postrelease community supervision, and parole.”  (Stats. 2012, ch. 43, § 2, italics added.)  As explained in a legislative analysis: “Per 2011 Public Safety

---

[9] This statute superseded an enactment earlier that year adding a different version of section 3000.08, which never took effect.  (Stats. 2011, ch. 15, § 469.)

Realignment, effective July 1, 2013, the trial courts will be responsible for conducting revocation proceedings for four distinct categories of supervision: probation, mandatory supervision, post release community supervision, and parole. Under the current statutory scheme, distinct procedural requirements are prescribed for each of the four types of supervision. To reduce confusion and promote consistency across the four types of significantly similar procedures, this bill amends various statutes to apply current probation revocation procedures to all four categories of supervision." (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 1023 (2011–2012 Reg. Sess.) as amended June 25, 2012, p. 3.)

Following realignment, in 2013, section 1203.2(b)(1) was amended to add the following sentence (which remains in the current version of the statute): "The court in the county in which the person is supervised has jurisdiction to hear the motion or petition, or for those on parole, either the court in the county of supervision or the court in the county in which the alleged violation of supervision occurred." (Stats. 2013, ch. 32, § 7.) The legislative counsel's digest stated, "Existing law requires [certain] persons to be subject to parole supervision by the [CDCR] following release from state prison and the jurisdiction of the court in the county in which the parolee is released or resides *for the purpose of hearing petitions to revoke parole and impose a term of custody.* [¶] This bill would require persons subject to parole supervision to additionally be subject to the jurisdiction of the court in the county in which the alleged violation of supervision occurred *for the purpose of hearing petitions to revoke parole and impose a term of custody.*" (Legis. Counsel's Dig., Sen. Bill No. 76 (2013–2014 Reg. Sess.), italics added.) A legislative analysis similarly characterized the bill as providing "in regards to parolees, either the court in the county of supervision or the court in the

10

county in which the alleged violation of supervision occurred has *jurisdiction to hear a revocation motion or petition.*" (Sen. Rules Com., Off. of Sen. Floor Analyses, Rep. on Sen. Bill No. 76 (2013–2014 Reg. Sess.) as amended June 13, 2013, p. 2, italics added.)

The legislative history thus clearly shows that (1) in enacting realignment, the Legislature intended to grant the courts only limited jurisdiction over parolees, extending to parole violations and revocation proceedings; and (2) by adding parole to section 1203.2, the Legislature intended to further implement realignment by providing uniform *revocation* proceedings for the various types of supervision. Nothing in the legislative history indicates that, by adding parole to section 1203.2, the Legislature intended to give courts jurisdiction over parolees that extended beyond the context of an alleged parole violation.

A comparison with section 1203.3 provides further support for a construction of section 1203.2 limiting its application to alleged parole violations. Section 1203.3 authorizes courts "at any time during the term of probation to revoke, modify, or change its order of suspension of imposition or execution of sentence," and sets forth procedures for the modification of probation terms or conditions. (§ 1203.3, subds. (a) & (b)(1).) By its terms, the statute "does not apply to cases covered by Section 1203.2." (§ 1203.3, subd. (e).) Courts considering sections 1203.2 and 1203.3 before realignment concluded the two statutes applied to probationers in different contexts: "Section 1203.3 does not apply after a probationer is rearrested on a probation violation. (§§ 1203.2, 1203.3, subd. (e); [citation].) Instead, when a probationer is rearrested, the governing statute is section 1203.2 . . . ." (*People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1425; see also *People v. Howard* (1997) 16 Cal.4th 1081, 1094 ["[S]ection 1203.3 . . . . by its terms does

11

not apply to probation revocations *following rearrests*, which section 1203.2, subdivision (c), covers."].)  Under these cases, section 1203.2 governs proceedings involving alleged probation violations and when the probationer has already been arrested, while section 1203.3 governs changes to probation in other contexts.  This distinction was long-established, as an early case held the statutes were "adopted for separate and distinct purposes.  Section 1203.2 provides for and covers one situation, namely, where a probationer is rearrested because of a claimed violation of the terms of his probation. . . . [¶] On the other hand, section 1203.3 seems to cover another situation entirely, and to provide for revocation, modification or termination of the original order in cases where the probationer has not been rearrested." (*Ex parte Walden* (1949) 92 Cal.App.2d 861, 864.)[10]  In light of this distinction between sections 1203.2 and 1203.3, it is notable that the 2012 bill adding parole to section 1203.2 also amended section 1203.3, but the amendments to section 1203.3 added *mandatory supervision* only.  (Stats. 2012, ch. 43, §§ 30 & 31.) This further indicates a legislative intent that court jurisdiction over parolees, as provided for in section 1203.2, extends only to instances where the parolee has been arrested for alleged parole violations.

CDCR also relies on cases indicating that section 1203.2 governs alleged violations and revocation hearings.  For example, our Supreme Court concluded, based on "[a] review of the amendments to section 1203.2 from the time it was added to the Penal Code in 1935 until [a] 1977 amendment," that the "amendments consistently reflect the Legislature's concern with continuing and broadening the court's jurisdiction to resolve issues regarding a defendant's noncompliance, during the term of probation, with the terms

---

[10] Although *Ex parte Walden* predated the addition of subdivision (b) to section 1203.2, the legislative history of that amendment, discussed above, indicates no intent to change this understanding.

and conditions of probation, as well as providing statutory procedures for the exercise of such jurisdiction." (*People v. Leiva* (2013) 56 Cal.4th 498, 514.) In a subsequent case, the Supreme Court stated, "Under the Realignment Act, jurisdiction over most petitions to revoke parole shifted to the superior courts," and characterized sections 1203.2 and 3000.08 as "establish[ing] a statutory framework for parole revocation." (*People v. DeLeon* (2017) 3 Cal.5th 640, 647.) One Court of Appeal found, "In enacting realignment, the Legislature gave the trial court the authority to modify the conditions of parole *in a parole revocation proceeding* even though the defendant also has the option of filing an administrative appeal with CDCR to challenge the conditions of parole." (*Johnson, supra,* 45 Cal.App.5th at p. 401, italics added; see also *id.* at p. 394 ["Prior to realignment, '[t]he executive branch ha[d] "inherent and primary authority" over parole matters.' [Citation.] But after realignment that is no longer the case *for matters arising in parole revocation proceedings*." (italics added)]; *Department of Corrections & Rehabilitation v. Superior Court* (2015) 237 Cal.App.4th 1472, 1480 ["[T]he superior court is vested with the authority to modify the conditions of parole if it finds the parolee has violated the terms of his or her parole."].) Although these cases did not consider the issue before us and are thus not direct authority, they do underscore the general understanding of section 1203.2's limited applicability.

We recognize that our Supreme Court, in a pre-realignment case, concluded section 1203.2(b)(1) "did not intend to alter the power of courts to modify probation absent a violation of the conditions of probation." (*People v. Cookson* (1991) 54 Cal.3d 1091, 1100 (*Cookson*).) Specifically, the court held the provision's specification of modification on the grounds listed in subdivision (a) did not so limit courts' power to modify probation. However,

13

in so holding, the court relied on section 1203.3 and earlier cases to find this authority over probationers: "In 1970, the Legislature amended section 1203.2 by adding subdivision (b), which provides that a court may modify probation on the grounds listed in section 1203.2[, subdivision a]. (Stats. 1970, ch. 333, § 1, p. 729.) Although it could be argued that the Legislature, by amending the statute, intended to overturn [earlier cases] and to limit the court's power to modify to the grounds listed in section 1203.2[, subdivision a], we find no direct evidence of such an intent in the available legislative history. Instead it appears the Legislature added section 1203.2[, subdivision b] in an effort to improve supervision of probationers by enabling law enforcement officials to petition for revocation or modification. Moreover, the language used in section 1203.2[, subdivision b] does not indicate an intent to limit the court's power to modify. We also note that the Legislature did not alter section 1203.3, which broadly states the court's power to modify." (*Cookson,* at p. 1100.) We thus take *Cookson* to hold that section 1203.2(b)(1) does not restrict authority conferred on the courts by other statutes and judicial interpretations.

In sum, we conclude, based on the statutory language, legislative history, and statutory framework, that section 1203.2(b)(1) does not authorize courts to modify parole conditions in the absence of an alleged parole violation or revocation hearing. The trial court thus lacked statutory authority to modify Defendant's parole condition.[11]

This result does not leave a nonviolating parolee without a judicial remedy. "A petition for a writ of habeas corpus can be used to challenge

---

[11] Because of this conclusion, we need not and do not decide CDCR's contention that the modification misapplied the law and violated separation of powers.

14

a parole restriction." (*In re David* (2012) 202 Cal.App.4th 675, 680; see also *Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 685 ["A parolee may bring a habeas proceeding challenging his or her parole conditions . . . ."].)[12] We note, however, the incongruity of a system whereby a parolee accused of violating parole may receive a favorable modification from the court, while one who has complied with all terms and conditions must seek relief through the more onerous procedures of a habeas petition. Moreover, there are advantages to allowing courts to modify conditions outside of an alleged violation. As the Supreme Court noted in *Cookson,* "permitting modification even absent a violation of the conditions of probation is often consistent with the flexibility necessary to achieve the rehabilitative goals of probation: '[R]equiring a court or parole board to await a violation of a condition may be disadvantageous to the probationer or parolee. After a violation has occurred the respective authorities may be disinclined to do anything other than revoke, although they might have been receptive to modification prior to the actual commission of the violation. Allowing modification even absent a violation of a release condition may therefore be in the long-term interest of the parolee or probationer.' " (*Cookson, supra,* 54 Cal.3d at pp. 1098–1099.)

These considerations cannot, and do not, impact our analysis. " 'Crafting statutes to conform with policy considerations is a job for the Legislature, not the courts; our role is to interpret statutes, not to write them.' " (*Fort Bragg Unified School Dist. v. Colonial American Casualty & Surety Co.* (2011) 194 Cal.App.4th 891, 909–910.) The Legislature has

---

[12] In addition, parolees can seek relief administratively with CDCR. (Cal. Code Regs., tit. 15, § 3481, subd. (a) [parolee can "submit a written grievance . . . to dispute a policy, decision, action, condition, or omission by the [CDCR] or departmental staff that causes some measurable harm to their health, safety, or welfare"].)

granted courts only limited jurisdiction over parolees, restricted to alleged parole violations and revocation hearings.  Because this system deprives courts of the flexibility lauded in *Cookson* and creates the anomalous result whereby a violating parolee can receive a favorable modification under section 1203.2(b)(1) while a nonviolating parolee cannot, we urge the Legislature to act and grant courts the authority to modify parole conditions outside of an alleged violation or revocation proceeding.

## DISPOSITION

The March 6, 2020 order modifying Defendant's parole condition is reversed.

_____
Simons, Acting P. J.

WE CONCUR:


_____
Needham, J.


_____
Rodriguez, J.*


A160394


---

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17

Superior Court of Alameda County, Hon. Scott Patton

Xavier Becerra, Attorney General, Matthew Rodriquez, Acting Attorney General, Phillip J. Lindsay, Assistant Attorney General, Maria G. Chan, Sara J. Romano, and Jennifer G. Ross, Deputy Attorneys General, for Real Party in Interest and Appellant.

Randall Conner, under appointment by the Court of Appeal, for Defendant and Respondent.