Filed 2/10/16  P. v. Holston CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| THE PEOPLE, | C077537 |
| Plaintiff and Respondent, | (Super. Ct. No. 62132465) |
| v. | |
| THERON KENNETH HOLSTON, | |
| Defendant and Appellant. | |

After defendant Theron Kenneth Holston asked his parole agent to remove some property from defendant's truck, the parole agent found a machete.  Subsequently, defendant's parole agent discovered defendant's global positioning system (GPS) monitoring device was inoperative.  The Department of Corrections and Rehabilitation (Department) filed a petition alleging defendant violated two terms of his parole.  Defendant filed a motion to be returned to the county of his last legal residence and for a modification of parole conditions regarding the GPS device.  The trial court found it lacked jurisdiction to hear defendant's motion and imposed 120 days in jail for the parole violation.  Defendant appeals, challenging the court's denial of his motion.  We shall affirm the judgment.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2012 defendant was released from state prison and placed on parole. Defendant's county of supervision was Yuba County, where he had been convicted of a felony.

The parole violation report prepared by his parole agent sets forth the following facts surrounding the parole violations.

"Upon being taken into custody, Holston asked me if I would secure some of the property from his truck as it had a broken driver's side window. Specifically, he asked me if I would take his legal papers and hold them for him along with some of his clothes that were behind the seat. I removed the boxes of his legal work and placed them into the back of my truck. Upon placing the seat forward, I located the machete in the driver's seat pocket. Holston's conditions of parole, which he [signed] on 09/12/12, prohibits [sic] him from having such weapons. [¶] . . . [¶]

"On 08/11/14 at about 0652, I was contacted by the veritracts [sic] monitoring center . . . and advised that Holston was in dead battery status. I got onto the veritracks [sic] site and noticed that his last point was showing him at a Kaiser facility in Roseville (Placer County). I contacted Kaiser and was advised that there was no one in their facility by the name of Holston and that the facility located at the address in question was just a medical building. I contacted the unit supervisor (Haws) and advised him of the situation. I then went to the area of Holston's last point. I drove around the facility and then located a hole in the fence along the freeway and walked up and down the bushy area in an attempt to locate Holston. It appeared to be an area where transients may frequent. I was unable to locate Holston and returned to my vehicle and again called my supervisor to advise him that I was not able to locate him and would return to the office to issue a warrant. As I was about to drive off, a white truck pulled up behind me and Holston got out of the truck. He told me that his charger was broken and that he had sent me three beeps as a distress signal. I told him to drive his truck to the parole office, but

2

he said he was out of gas. Due [to the] circumstances of his dead battery, which is a mandatory return to custody, I contacted Roseville PD to obtain assistance with Holston's transport. Officer Bauman (106), Roseville PD transported Holston to the Placer County jail."

In August 2014 a petition for revocation of parole was filed in Placer County Superior Court alleging two parole violations: unauthorized possession of a knife with a blade exceeding two inches, and disabling his GPS tracking device by failing to charge it as required. Defendant denied the allegations and the trial court granted his *Faretta* motion to represent himself.[1]

Defendant filed a motion to return to El Dorado County for parole supervision and a motion to modify his parole conditions related to the charging of his GPS device. At the hearing on those motions, defendant admitted the allegation that he violated his parole by possessing a knife. The Placer County Superior Court dismissed the allegation involving the GPS device. The court subsequently sentenced defendant to 120 days in county jail on the parole violation and ordered him to report to parole immediately upon release. The court denied the motions based on a lack of jurisdiction. Defendant filed a timely notice of appeal.[2]

## DISCUSSION

### TRANSFER OF DEFENDANT'S COUNTY OF SUPERVISION

Defendant argues the trial court erred in finding it lacked jurisdiction to grant his request to transfer his county of parole supervision from Yuba County to El Dorado

---

[1] *Faretta v. California* (1975) 422 U.S. 806 [45 L.Ed.2d 562] (*Faretta*).

[2] The parties agree orders from parole revocation proceedings are appealable.

3

County.  According to defendant, the court possesses the discretion to transfer supervision under Penal Code section 3000.08, subdivision (f).**3**

**Background**

In July 2012, following his release from prison, defendant was placed on parole supervision in Yuba County, the county in which he suffered the underlying felony conviction.  A sex offender tracking program document, prepared in anticipation of defendant's release, noted that the address where defendant expected to reside was in El Dorado County.  However, according to his parole agent, defendant never mentioned trying to move from Yuba County or transferring his supervision to another county.

After his release, defendant committed several parole violations.**4**  He was arrested in Placer County in August 2014 for the parole violation in the present case.  At that time he stated he was on his way to El Dorado County.  His parole agent reported that according to defendant, "El Dorado County was actually his last legal county of residence and that there should be proof in his file."  However, according to the parole agent, defendant did not have permission to be out of Yuba County and was aware of the proper procedures for obtaining a transfer to another county.

Defendant admitted the parole violation and filed a motion to be transferred to El Dorado County for parole supervision.  He requested an order directing the Department that his last legal residence was located in El Dorado County and an order transferring his parole supervision to El Dorado County as a modification of his parole conditions.

At a hearing on September 16, 2014, the district attorney stated the supervising parole agent and the litigation coordinator reviewed defendant's file.  They were currently processing defendant's request and determining if he should be transferred to

---

**3**  All further statutory references are to the Penal Code unless otherwise designated.

**4**  An appeal from one of the parole revocation proceedings is currently before us in *People v. Holston*, case No. C076171.

4

supervision in El Dorado County.  Defendant argued the trial court could order the transfer, but the trial court disagreed.  The court stated:  "I don't know I agree with you on the whole issue of the court determining the placement. . . .  [T]hat would have been Yuba County, not me.  Remember, I don't have your sentencing documents from the prior court. . . .  [¶] . . . [¶]

". . . What I'm telling you, Mr. Holston, is I don't think that's going to do you any good.  I don't think I have jurisdiction to order it, but I will do the research, and it will be an interesting issue for me.  I have to put it over to next week."

At the sentencing hearing, defendant renewed the motion.  The court responded: "The determination of where you are paroled is solely in the hands of the Department of Corrections and the Board of Parole.  The local court does not have jurisdiction to determine your place of parole.  Just like we can make a suggestion where you be housed, when we send somebody to the Department of Corrections, it is not ultimately the local court's job or determination on where that person is housed for housing, what programs they're authorized to do, and where you're going to be paroled.

"Your motion is denied. . . .  I don't have jurisdiction."  The court also suggested that the appropriate mechanism for relief would be through a petition for a writ of habeas corpus.

**Discussion**

Section 3003, subdivision (a) provides that an inmate released on parole "shall be returned to the county that was the last legal residence of the inmate prior to his or her incarceration."  However, a parolee "may be returned to another county if that would be in the best interests of the public."  (§ 3003, subd. (b).)  Defendant argues the court erred in failing to exercise its discretion, under the mistaken impression it lacked jurisdiction, to consider defendant's request to modify his parole as to his county of supervision.

Defendant contends section 3000.08, subdivision (f)(1) explicitly gives the superior court the authority to modify conditions of parole supervision, if appropriate.

5

Section 3000.08, subdivision (f) states: "the court shall have authority to do any of the following:

"(1) Return the person to parole supervision with modifications of conditions, if appropriate, including a period of incarceration in county jail.

"(2) Revoke parole and order the person to confinement in county jail.

"(3) Refer the person to a reentry court pursuant to Section 3015 or other evidence-based program in the court's discretion." According to defendant, a parolee's placement is just such a condition of parole supervision.

However, as we pointed out in *City of Susanville v. Department of Corrections & Rehabilitation* (2012) 204 Cal.App.4th 377, 382 (*Susanville*), "the Legislature has given the Department exclusive jurisdiction and full discretion to determine a parolee's placement. (§ 3003; *In re Roberts* (2005) 36 Cal.4th 575, 588; *People v. Stevens* (2001) 89 Cal.App.4th 585, 588.)" In contrast, we enumerated the *Susanville* defendant's parole "conditions," which included living in a trailer on prison grounds, when defendant must be in his living quarters, notification of prison employees whenever a visitor arrives or departs, escorted appointments outside the prison grounds, and GPS monitoring. (*Susanville*, at p. 382.)

Defendant argues our decision in *Susanville* predates enactment of section 3000.08, which became effective in July 2013, and that section 3000.08, subdivision (f) allows the trial court to modify a parolee's placement. We disagree.

The Department's determination of which county will be the county of supervision for a parolee is not a condition of parole subject to modification by the trial court during parole revocation proceedings. In contrast to the conditions the parolee must follow on release, the choice of county of supervision is made prior to the parolee's release. Here, defendant's "Notice and Conditions of Parole" does not include any condition regarding defendant's county of supervision. Instead, as in *Susanville*, defendant's conditions include residency-related conditions, registration requirements, and specific limits on

6

where he may reside. Section 3000.08, subdivision (f) sets forth a general grant of authority to the trial court to modify conditions of parole, a grant which does not include the authority to modify the parole placement determinations set forth in section 3003. As we found in *Dept. of Corrections & Rehabilitation v. Superior Court* (2015) 237 Cal.App.4th 1472, 1482: "There is no question the Realignment Act places additional responsibility on the superior court with respect to parole revocation hearings. In construing the general provision, section 3000.08, authorizing the superior court to modify a parole condition within the whole system of law governing how and where parolees should reside, the specific criteria set forth in section 3003 must prevail. This construction provides harmony within the entire statutory scheme, preserving the Department's 'exclusive jurisdiction and full discretion to determine a parolee's placement.' ([*Susanville*], *supra*, 204 Cal.App.4th at p. 382.)" The trial court did not err in finding it lacked jurisdiction to make such a modification.

## REQUEST TO MODIFY PAROLE

Defendant also faults the trial court for failing to exercise its discretion by concluding it lacked jurisdiction to modify the conditions of his parole surrounding his GPS device. Alternatively, defendant argues the failure to modify the GPS condition resulted in imposition of unreasonable parole conditions.

**Background**

Following his release from prison, defendant was subject to parole conditions, including: "You shall charge the GPS device at least two times per day (every 12 hours). Charge the device at _____ a.m. for at least 1 full hour. Charge the device at _____ p.m. for at least 1 full hour. You shall charge the GPS device for 1 hour within 10 minutes of receiving a low battery alert." In addition, the parole conditions state: "You shall charge the GPS device at least two times per day (every 12 hours) for at least 1 full hour for each charging time."

Defendant's parole agent stated that a supply of GPS chargers is available for use by parolees at an establishment in Yuba County known as Buddy's House. According to the agent: "Holston did not have permission to be out of his county of supervision. Had he been in Yuba County, he would have been able to locate a charger at Buddy's [H]ouse as it is known that agent Spino and I keep a supply of chargers there with the house managers for this purpose. Holston, whom [*sic*] prides himself on being highly knowledgeable of the legal system, knows what the proper procedures are for obtaining a transfer to another county. He claims that he has proof of his last legal residence being El Dorado, but has failed to provide such proof. Furthermore, he never mentioned trying to move from Yuba [C]ounty prior to his arrest."

Following his arrest, defendant admitted the knife possession allegation, and the allegation concerning the disabling of the GPS device was dismissed. At that time, defendant filed a motion for "Modification of Parole Conditions No. 44 and No. 45 Requiring Defendant to Charge GPS Device Without Provision to Comply." Defendant contended his failure to charge his GPS device stemmed from his homelessness and the corresponding lack of availability of electricity. In order to keep his GPS device charged and not violate parole, defendant had been forced to steal electricity almost daily from available sources, potentially violating various laws. He explained that establishments which provide outlets for charging electronic devices generally provide them only to paying customers, not to a homeless person.

In his motion, defendant requested a provision requiring the parole authority to pay for the charging of the GPS device. The motion proposed to modify the condition to state: "This condition is applicable only when your agent of record (AOR) provides electricity to you or a provision to cover your costs of electricity, if it is determined by your (AOR) that you are unable to pay those costs per PC Sec. 3010.8 subd (b). (Your parole may not be suspended or revoked based on your inability to pay costs per PC Sec. 3010.8 subd (a), or unless this contingency is satisfied, for non-compliance with this

condition.)  Any monetary provision provided to you by your (AOR) to cover your costs is a loan under Cal. Code of Regs. Title 15 Sec. 3605 Financial Assistance."

At a hearing on September 2, 2014, the People opposed defendant's proposed modification, stating "the term of his parole that he keep his ankle monitor charged, I think, is an appropriate term and condition of parole, and I wouldn't be willing to modify that nor should I even have the authority to modify the conditions of his parole without his parole agent agreeing to such a modification.

"So even if the parole agent was, I don't think that would be appropriate to modify his parole condition regarding charging of his GPS device."  The parties agreed to consider the motion at a later date with the parole agent present.  The court noted, "if I'm going to reinstate you on parole, I probably do have the authority to change the terms and conditions of that parole" but wanted to give the People the opportunity to respond.

On September 16, 2014, in a hearing before a different judge, the People agreed the court possessed jurisdiction to modify defendant's parole conditions.  Defendant requested the court relieve him of his duty to charge his monitor, but the court stated that was not going to happen.  The court stated it would review the motion.

On September 22, 2014, when the court sentenced defendant to 120 days in jail for the parole violation, the court denied defendant's motion to transfer parole supervision to another county based on a lack of jurisdiction.  Defendant then stated he had a second motion, and the court stated, "No, you don't."  Defendant replied, "Yes, I do.  I have a second motion."  The court responded, "Mr. Holston, I don't have jurisdiction."  Defendant stated he needed to be sentenced on his parole violation and the court replied: "That's the only thing we're here for today.  I don't have jurisdiction over the other matters that you're requesting."

The court suggested habeas corpus might be an appropriate remedy.  The court then stated:  "At this point he's sentenced to 120 days on the parole violation.  We do not have jurisdiction over his other motions.  They are all denied.  There hasn't been any

9

additional requests at this point. The only thing we can do is add terms to his parole under the new legislation; otherwise, we can't. We don't have other jurisdiction." Defendant said, "The second motion I'm asking to add language to the parole violation to make it possible for me to charge my monitor. They want me to just go off and do that." The Court replied, "I'm not going to do that, Mr. Holston. You're asking -- I saw what you're asking for."

**Discussion**

Defendant contends the court failed to exercise its discretion because it concluded it lacked jurisdiction. To the degree the court did exercise its discretion, defendant alternatively argues, it abused that discretion "because contradictory parole conditions creating a paradoxical situation are inherently unreasonable." We disagree on both counts.

Our review of the record reveals contradictory statements by the trial court judges as to whether the court possessed the jurisdiction to entertain defendant's request to modify the GPS requirements. Initially, both the court and the People acknowledged the court's authority to modify the conditions of defendant's parole. However, at the September 22, 2014, hearing, the matter became muddled. The court stated it did not have jurisdiction to determine defendant's place of parole: "Your motion is denied. End of conversation. I'm not letting you make more record. I don't have jurisdiction." Defendant persisted and the court continued to decline to order a change in the place of parole. Defendant then told the court he had a second motion; the court responded that defendant did not. Defendant continued to argue and the court said, "Mr. Holston, I don't have jurisdiction. You're on for parole violation." The colloquy continued and the court again stated: "That's the only thing we're here for today. I don't have jurisdiction over the other matters that you're requesting." Defendant argued: "The second motion I'm asking to add language to the parole violation to make it possible for me to charge my

10

monitor. They want me to just go off and do that." The court responded: "I'm not going to do that, Mr. Holston. You're asking -- I saw what you're asking for."

Although it is not crystal clear, the court, while initially stating it lacked jurisdiction, ultimately denied defendant's request regarding the GPS device on the merits by stating, "I'm not going to do that." The court did not abuse its discretion in denying defendant's request.

As noted, as a condition of his parole, defendant was required to wear a GPS device 24 hours a day and charge the device for one full hour, twice a day, 12 hours apart. Defendant argues he is homeless and indigent with no place to charge the device. In addition, his parole conditions require him not to engage in any conduct prohibited by law. According to defendant, he should not be forced to violate this condition by stealing electricity. Nor should he be forced to buy "expensive albeit non-nutritious lattes or cappuccinos to avoid parole revocations," since businesses that permit charging of electronic devices do so only for paying customers "and implicitly do so only for well-dressed and well-groomed people."

Because he is indigent, defendant argues, he could not afford to pay the costs of charging the GPS device and the parole requirement obligating him to do so was unreasonable. In refusing to modify the GPS parole condition, the court abused its discretion.

However, the record discloses that the parole department provides a means for an indigent defendant to recharge his GPS device. A supply of chargers is available for parolees at Buddy's House in Yuba County. Defendant argues from this "scant and vague allusion by the parole officer in the Parole Violation Report, respondent conjures up a cornucopia of GPS chargers and speculates without record support that such chargers are readily available to [defendant] 24 hours a day without charge." He does not, however, explain why the provision of battery chargers at Buddy's House would not

11

allow him to comply with his parole condition.  The trial court did not err in refusing to modify the GPS condition based on the availability of charging facilities.

## DISPOSITION

The judgment is affirmed.


                                                          RAYE          , P. J.



We concur:



          HULL          , J.



          ROBIE          , J.

12